**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Irvin T. WILSON, Jr., Defendant–Appellant.**

**No. 91–3333.**

United States Court of Appeals, Seventh Circuit.

Argued May 21, 1992.

Decided Aug. 26, 1992.

Rehearing Denied Oct. 13, 1992.

---

Mark D. Stuaan, Asst. U.S. Atty., Indianapolis, Ind., for plaintiff-appellee.

Richard D. Heideman, Roya A. Ghazi (argued), Heideman Cardin, Louisville, Ky., for defendant-appellant.

Before COFFEY and KANNE, Circuit Judges, and ESCHBACH, Senior Circuit Judge.

KANNE, Circuit Judge.

Frederick Adkins was travelling south on Interstate 65 when he stopped for gas at the Brooks, Kentucky exit. At the stop, a Secret Service Agent and an FBI Agent approached him and told him that they were investigating rumors that someone was passing counterfeit money along the interstate. After obtaining Adkins' permission, the agents searched Adkins' briefcase and recovered approximately $80,000.00 in counterfeit twenty-dollar federal reserve notes. The agents placed Adkins into custody and read him the *Miranda* warning. During the ensuing trip to the Secret Service office in Louisville, Kentucky, Adkins agreed to help the agents apprehend his source, Irvin Wilson. In return, the agents allowed Adkins to remain at liberty.

In early October 1990, Adkins recorded several conversations with Wilson and obtained from him samples of counterfeit bills. The Secret Service and FBI agents, in part utilizing evidence obtained by Adkins, obtained a search warrant for Wilson's pet store, "Pet Paradise." On the morning of October 7, 1990, two Secret Service agents and an FBI agent went to "Pet Paradise" to execute the warrant. Another informant had told the agents that Wilson would arrive in the early morning and would remove any counterfeit bills from the store. At 3:40 a.m., Wilson drove his car into the pet store's parking lot. After dropping off a passenger, he drove toward the lot's exit.

As Wilson attempted to leave the parking lot, two secret service agents blocked

one exit of the lot with their car. The agents then walked towards Wilson's car and displayed their badges and shouted "Police" and "Federal Agent" and told Wilson to stop. Wilson then threw his automobile into reverse and rapidly backed away from the Secret Service agents, while they continued shouting at him to stop. The FBI agent finally thwarted Wilson's attempt to exit the lot by moving his car to block the other exit of the parking lot.

With that exit blocked, Wilson rammed into the FBI agent's car and the Secret Service agents promptly drew their guns. Wilson was not finished; he then ran into one of the Secret Service agents, throwing him onto the hood of his car. He then tried to flee by running over a fence surrounding the parking lot. As he drove away, the agents fired six shots at him, striking him five times. Wilson was unable to clear the barrier surrounding the lot and he was taken into custody. Later that day, when a search warrant was executed at the pet store, $17,000.00 in counterfeit bills was found, as well as a copier with a green ink cartridge.

A grand jury returned a three count indictment against Wilson, charging him with three offenses arising out of the counterfeiting conspiracy. The grand jury also indicted Wilson separately on two counts of assaulting federal officers. Upon a motion by the government, the district judge consolidated the cases for trial.[1]

After trial, a jury found Irvin Wilson guilty of conspiring to counterfeit currency and other related offenses, in violation of 18 U.S.C. §§ 371, 472 and 473, and of assaulting federal officers, in violation of 18 U.S.C. §§ 111 and 1114. Pursuant to the Sentencing Guidelines, Judge Dillin sentenced Wilson to a term of 78 months imprisonment, followed by a three-year term of supervised release. Wilson appeals on the grounds that the district judge erred in denying his motion to suppress certain evidence obtained by government agents and that the district judge made several prejudicial errors at trial.

We address first Wilson's contention that the district judge erred in denying his motion to suppress the evidence recovered from the search of the pet store. Wilson argues that the agents failed to properly execute the warrant because they failed to show or give anyone a copy of the warrant, and therefore, any evidence obtained from the search should have been suppressed.

■ Normally, we review the denial of a motion to suppress for clear error. *United States v. Ferguson*, 935 F.2d 1518, 1522 (7th Cir.1991); *United States v. Edwards*, 898 F.2d 1273, 1276 (7th Cir.1990). "Our inquiry is factually based and requires that we give particular deference to the district court that had the opportunity to hear the testimony and observe the demeanor of the witnesses." *Ferguson*, 935 F.2d at 1522 (quoting *Edwards*, 898 F.2d at 1276); *see also United States v. Spears*, 965 F.2d 262, 270 (7th Cir.1992) ("in warrant cases our review must be for clear error").

■ However, Wilson did not present this argument to the district judge. At the suppression hearing, Wilson argued only that the warrant was not supported by probable cause and that the information presented to the authorizing magistrate was stale. Because Wilson did not present his argument that the agents did not properly execute the warrant to the district court, he has waived it. Thus, we review only for plain error. FED.R.CRIM.P. 52(b); *United States v. Simone*, 931 F.2d 1186, 1192 (7th Cir.), *cert. denied,* —— U.S. ——, 112 S.Ct. 584, 116 L.Ed.2d 609 (1991). An error is plain only when it results in a miscarriage of justice of such magnitude that the defendant would probably have been acquitted absent the error. *Id.; United States v. Valencia*, 907 F.2d 671, 680 (7th Cir.1990). It is apparent to us that the record does not support Wilson's assertions and we hold that the warrant was properly executed. The district judge did not err in denying Wilson's motion to suppress.

---

**1.** Adkins, Wilson's co-defendant, pled guilty to one count of possession and concealment of approximately $80,580.00 in counterfeit federal reserve notes.

Wilson also raises several objections to the court's evidentiary rulings. Wilson first argues that the district judge erred in admitting several tape-recorded conversations between Adkins and himself. Wilson maintains that the conversations were hearsay co-conspirator statements and that the statements were inadmissible because they were not made in furtherance of the conspiracy between himself and Adkins. *See* FED.R.EVID. 801(d)(2)(E); *United States v. Robinson,* 956 F.2d 1388, 1394 (7th Cir. 1992). Alternatively, he argues that the conversations, which occurred after Adkins had been arrested, were not made during the pendency of the conspiracy. *Robinson,* 956 F.2d at 1394.

Wilson did not raise this objection at trial. When the tapes were admitted, Wilson's attorney objected on the ground that the tapes had not been in the sole control of the government, and, therefore, were not authentic. After discussing his objection with the district judge, Wilson's attorney agreed that the jury was entitled to determine whether the tapes were authentic. The district judge overruled the objection. Wilson's attorney raised no other objections to the admissibility of the tapes.

■ Because Wilson did not raise co-conspirator statements objection at trial, we hold that it has been waived. *Simone,* 931 F.2d at 1192. Consequently, again Wilson can argue only that there was plain error. *Id.; United States v. Balzano,* 916 F.2d 1273, 1280 (7th Cir.1990); *Simone,* 931 F.2d at 1192. In reviewing Wilson's objection, we also note that we review a claim that the district court erred in admitting or excluding evidence for an abuse of discretion, giving the district judge great deference. *United States v. Kramer,* 955 F.2d 479, 491 (7th Cir.1992); *United States v. Garner,* 837 F.2d 1404, 1416 (7th Cir.1987), *cert. denied,* 486 U.S. 1035, 108 S.Ct. 2022, 100 L.Ed.2d 608 (1988).

■ Wilson inaccurately characterizes the taped statements as the statements of his co-conspirator Adkins. The statements were not hearsay because they were recordings of Wilson's own words, and were properly admitted as admissions. *See*

*United States v. Eschweiler,* 745 F.2d 435, 437 (7th Cir.1984), *cert. denied,* 469 U.S. 1214, 105 S.Ct. 1188, 84 L.Ed.2d 334 (1985) (noting that taped conversations between undercover agents or informants and suspects are' admissible); *United States v. Craig,* 573 F.2d 455, 474 (7th Cir.1977), *cert. denied,* 439 U.S. 820, 99 S.Ct. 82, 58 L.Ed.2d 110 (1978); *see also* 18 U.S.C. §§ 2511(2)(c), 2515. Thus, Wilson's argument that the conversations contained inadmissible co-conspirator statements is without merit.

■ Equally meritless is Wilson's claim that the tapes were not "authentic." The district judge correctly stated that the jury is generally entitled to determine whether the recordings are genuine. *See Robinson,* 956 F.2d at 1395; *United States v. Zambrana,* 864 F.2d 494, 498 (7th Cir.1988). Wilson has failed to support his speculations that the tapes were not authentic. He merely surmises that because the tapes were not in the sole custody of the government, someone may have altered them to Wilson's detriment. We hold that the district judge did not err in admitting the taped conversations between Adkins and Wilson.

Wilson next argues that the district court erred in excluding several of Adkins' written statements, which Adkins prepared after his arrest. He contends that the statements were necessary for an effective cross-examination of Adkins. According to Wilson, cross-examination would have revealed that, after Adkins was arrested by the agents, he manufactured evidence to implicate Wilson. The district court excluded the statements on the grounds that they were self-serving hearsay and were irrelevant. As we noted above, we give great deference to the district judge's decisions to admit or exclude evidence. *Kramer,* 955 F.2d at 491. After reviewing the record, we agree with the district judge that the statements were not relevant to the events at issue in this case. *See* FED. R.EVID. 401. We need not decide whether the statements were inadmissible hearsay. *See United States v. Jackson,* 780 F.2d 1305, 1313–14 n. 5 (7th Cir.1986) (noting

that self-serving declarations may be excluded if they are inadmissible hearsay). The district judge did not abuse his discretion in excluding Adkins' post-arrest statements.

Wilson next argues that the district judge erred in instructing the jury by failing to allow his trial counsel an opportunity to object to the instructions in a timely manner. The record belies Wilson's assertion. It shows that Judge Dillin clearly gave both counsel an opportunity to object to the instructions after the jury was instructed. In any event, in his brief and at oral argument, Wilson's attorney was unable to articulate any specific problem with any of the jury instructions. Therefore, we hold that the district judge correctly instructed the jury.

We AFFIRM the convictions of Irvin T. Wilson, Jr.