993 F.2d 1550
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Darryl T. WILLIAMS, Defendant-Appellant.
 No. 92-3377.
 United States Court of Appeals, Seventh Circuit.
 Argued Feb. 25, 1993.
Decided May 17, 1993.
 
 Before CUMMINGS, COFFEY and EASTERBROOK, Circuit Judges.
 
 ORDER
 
 1
 Defendant Darryl T. Williams, entered a guilty plea to charges of possessing cocaine with intent to distribute, possessing a firearm during drug trafficking, and possession of a firearm by a felon. See 18 U.S.C. §§ 922(g), 924(c); 21 U.S.C. § 841(a). The plea agreement allowed Williams to reserve his right to appeal the district court's order denying his motion to suppress evidence. Williams appeals the adverse suppression ruling. We affirm.
 
 I. BACKGROUND
 
 2
 On December 31, 1991, a radio dispatcher for the Indianapolis Police Department dispatched information regarding the location of two suspects who were believed to have been involved in a gun theft. Deputy Perkins of the Marion County Sheriff's Department was in the vicinity and proceeded to Don's Guns, located at 3807 North Lafayette Road in Indianapolis. Upon arriving at the scene, Deputy Perkins initially spoke with a security guard in the parking lot of Don's Guns and then with a black male (hereafter the "victim") sitting in a maroon four-door auto. The security guard informed Perkins that the victim claimed he had seen two black males in possession of his gun, a .44 magnum, that he had previously reported as stolen. The security guard described the suspects' vehicle as a gray Honda and gave Deputy Perkins its license plate number (the guard obtained this information from the victim). Officer Perkins then spoke with the victim who remained in the maroon vehicle. The man stated that he had filed a stolen property report on the weapon and was sure the gun in the suspects' possession was his because of its particular markings. The victim also gave Deputy Perkins a description and the license plate number of the suspects' vehicle. The description and plate number matched the information provided by the security officer. The victim described one of the men in the vehicle as "big."
 
 
 3
 Deputy Perkins radioed police headquarters and requested registration information on the license plate of the suspects' vehicle. The description of the vehicle and license plate number matched the information provided by the security guard and the victim. The dispatcher revealed that the vehicle was registered to an individual who lived about eight blocks from Don's Guns. Deputy Perkins drove to the address and searched for the gray Honda. During his search, Deputy Perkins located a gray Honda bearing the matching license plate number. Perkins, who was driving a marked squad car, proceeded to follow the vehicle and radioed for backup help from the Indianapolis City Police. Two black males occupied the vehicle, the passenger was later identified as the defendant Darryl Williams. During his pursuit, Deputy Perkins made eye contact with both the driver and the defendant who appeared intent on determining if they were being followed.
 
 
 4
 The suspects' vehicle pulled into a parking stall at Purnell's Barbecue and Deputy Perkins pulled behind the vehicle while illuminating the overhead lights of the squad car. With his P.A. system, Perkins instructed the occupants of the gray Honda to remain inside the vehicle and to place their hands in his view. At this time, Perkins observed a great deal of conversation between the driver and the occupant. The suspects failed to place their hands in sight and the defendant appeared preoccupied with something on the floorboard or between his legs because he was bent over in the seat. Shortly thereafter, other officers arrived at the scene. They approached the vehicle and observed a firearm on the floorboard area which matched the victim's earlier description. The officers also observed two small packets containing a white powdery substance and scales. Both of the occupants of the vehicle were placed under arrest.
 
 
 5
 On June 18, 1992, the defendant Williams filed a motion to suppress alleging that his detention and arrest as well as the seizure occurred without probable cause, without a warrant, and without his consent. Williams alleges that the information was obtained from an anonymous tipster who lacked credibility and thus Deputy Perkins was without reasonable grounds to believe Williams had committed a criminal offense. The district court held an evidentiary hearing on June 22, 1992 to resolve the issues and denied the motion to suppress on that date.
 
 II. WILLIAMS' APPEAL
 A. Standard of Review
 
 6
 Denial of a motion to suppress is subject to review for clear error. United States v. Wilson, 973 F.2d 577, 579 (7th Cir.1992). The inquiry in a denial of a motion to suppress "is factually based and requires ... particular deference to the district court that had the opportunity to hear the testimony and observe the demeanor of the witnesses." Id. (quoting United States v. Ferguson, 935 F.2d 1518, 1522 (7th Cir.1991)).
 
 B. Reasonable Suspicion
 
 7
 Our discussion turns on whether Deputy Perkins could "reasonably ... conclude in light of his experience that criminal activity may [have been] afoot" when he followed the vehicle and subsequently detained its two occupants. Terry v. Ohio, 392 U.S. 1, 30, 88 S.Ct. 1868, 1884-85, (1968). In Terry, the Supreme Court concluded that for investigative purposes, police may stop and briefly detain an individual when there is reasonable suspicion that the suspect is about to engage in criminal activity. The suspect may be detained even though the officer lacks probable cause to make an arrest. Id. Both parties agree Williams was the subject of an investigatory seizure commonly known as a "Terry stop."
 
 
 8
 In conducting a Terry stop, the officer "must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." Id. at 21, 88 S.Ct. at 1880 (footnote omitted). The inferences may be drawn from the officer's own experiences based upon the facts of which he is aware. United States v. Boden, 854 F.2d 983, 992 (7th Cir.1988). To determine whether the officer's investigation is reasonable, the court must consider the totality of the circumstances. Id.
 
 
 9
 The issue on appeal is whether Deputy Perkins had reasonable suspicion to conduct the investigative stop of the suspects' vehicle. Williams specifically challenged the veracity of the informant, alleging that his status was that of an anonymous tipster. Numerous cases have addressed the issue of whether "a tip from a reliable informant coupled with corroboration can provide a police officer" with reasonable suspicion to conduct a Terry stop. United States v. Lechuga, 925 F.2d 1035, 1038 (7th Cir.1991). In Adams v. Williams, 407 U.S. 143, 92 S.Ct. 1921, (1972), the Supreme Court upheld a Terry stop when an informant had advised police that the suspect was carrying a weapon. The officer was of the opinion that the informant was reliable because he had provided trustworthy information in the past. The Court concluded that although the tip lacked sufficient information to support a search warrant or an arrest, the information was sufficient to justify a Terry stop. Id. at 147, 92 S.Ct. at 1924. In dicta, the Court stated that the facts involved were "much stronger" than in the "case of an anonymous telephone tip." Id. at 146, 92 S.Ct. 1923. Recently, the Court rejected the idea that information from "an anonymous caller could never provide the reasonable suspicion necessary for a Terry stop." Alabama v. White, 496 U.S. 325, 329, 110 S.Ct. 2412, 2415 (1990). In White, the Court held that reasonable suspicion exists to justify a Terry investigatory stop when an anonymous tip is "sufficiently corroborated" through further investigation. Id. at 331, 110 S.Ct. at 2416. Moreover, this court has previously held that, "[w]hen an officer has 'received his information from some person--normally the putative victim or an eyewitness--who it seems reasonable to believe is telling the truth' ... he has probable cause." Gramenos v. Jewel Companies, Inc., 797 F.2d 432, 439 (7th Cir.1986), cert. denied, 481 U.S. 1028 (1987) (quoting Daniels v. United States, 393 F.2d 359, 361 (D.C.Cir.1968)). Gramenos is significant because the court had to find probable cause, a higher evidentiary standard than reasonable suspicion. Id.
 
 
 10
 Deputy Perkins relied on the following facts to support his reasonable suspicion that the suspects were engaged in criminal activity: (1) the victim personally reported that the stolen weapon was in Williams' possession; (2) the victim remained with the security officer until the police arrived; (3) the security guard advised Deputy Perkins that the victim reported two black men leaving the parking lot in a gray Honda and that one of the men was in possession of the firearm which was previously stolen; (4) the victim verified the information the security officer provided to Deputy Perkins, including the description and license plate number of the vehicle; (5) the victim provided a detailed description of the firearm, including its particularly unique markings; (6) the address corresponding to the license plate number was located in an apartment complex eight blocks away from the alleged crime scene; (7) the description of the vehicle corresponding to the license plate number matched the victim's description of the vehicle; (8) Deputy Perkins observed a vehicle matching the description and license plate number in the area of the vehicle's registration address; (9) two black males were observed inside the vehicle, consistent with the victim's description; (10) the defendant was intent on determining whether they were being followed by Deputy Perkins; (11) the officer observed a great deal of conversation between the defendant and the driver after he had instructed the men to remain in the vehicle and keep their hands visible; and (12) Perkins observed Williams bent over in the passenger seat floorboard area of the vehicle.
 
 
 11
 Based on the record before us, we reject the defendant's argument that the informant was an anonymous tipster whose statement was unreliable. We view the informant as a victim who provided credible facts that the suspects were engaged in criminal activity. Our conclusion is based on the fact that the informant was not an anonymous caller whose identity and veracity are indeterminate; rather, the victim gave a detailed report to the security guard and remained at the scene to repeat his story to Deputy Perkins. We hold, therefore, that under the totality of the circumstances, the information provided by the victim, which was corroborated by Deputy Perkins, furnished reasonable suspicion to justify the investigatory stop of the vehicle. Accordingly, the confiscated evidence was not obtained in violation of the Fourth Amendment. Thus the denial of the motion to suppress is
 
 
 12
 AFFIRMED.