4 F.3d 998
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Donald K. THATCHER, Defendant-Appellant.
 No. 92-2551.
 United States Court of Appeals, Seventh Circuit.
 Argued Feb. 25, 1993.
Decided Sept. 8, 1993.
 
 Before CUMMINGS, COFFEY and EASTERBROOK, Circuit Judges.
 
 ORDER
 
 1
 Pursuant to the terms of a plea agreement, on June 12, 1992, Donald K. Thatcher ("Thatcher") pled guilty to count one of a two-count indictment charging him with manufacturing marijuana in violation of 21 U.S.C. Sec. 841(a)(1). In his plea agreement Thatcher reserved the right to appeal the district court's denial of his motion to suppress evidence. We affirm.
 
 I. BACKGROUND
 
 2
 During the first week of June, 1991, defendant Thatcher was living in a trailer home with one Mary Ficklin and her two minor children. Prior to living with Thatcher, Ficklin had lived with one Willie Marcum. On June 7, 1991, Marcum visited Ficklin in Thatcher's trailer home during Thatcher's absence and attempted to convince his former live-in partner to move back with him. When inside the trailer, and while Ficklin was attending her children, Marcum walked down a hallway to a bedroom to investigate what he thought smelled like marijuana. When he opened the door, he found several marijuana plants at various stages of growth. By this time Ficklin had joined Marcum in the bedroom and Marcum remarked to her: "J.D. Maxwell would like to take a look at this." Maxwell was an Indiana State Police Trooper to whom Marcum had provided information in a previous investigation.
 
 
 3
 Marcum, accompanied by Ficklin and her children, then drove to Maxwell's home who was off duty that day. Marcum explained to Maxwell what he had seen in Thatcher's trailer and inquired of Maxwell if "he would like to make a bust." Maxwell responded by calling the State Police post in Bloomington and shortly thereafter several troopers arrived to follow up on Marcum's information. The troopers interviewed Marcum and Ficklin, and then proceeded to the Monroe County Courthouse to obtain a search warrant for Thatcher's trailer.
 
 
 4
 According to the district court, the troopers described what they had learned to deputy county prosecutor Mary Ellen Diekhoff upon arriving at the courthouse. Diekhoff caused a search warrant to be typed and took it to Michael Huerte, a local attorney, who was acting as Judge Pro Tem for the day. Diekhoff gave Huerte the warrant and put herself under oath.[1] Diekhoff related to Huerte the facts recited to her by the State Troopers which established probable cause for the issuance of the warrant. Diekhoff told Huerte that an informant, who had been reliable and credible in the past, observed marijuana plants growing inside Thatcher's trailer. Despite the fact that no affidavit was filed, nor was any tape recording made of Diekhoff's statement, Judge Pro Tem Huerte, believing that probable cause existed, read and signed the search warrant.[2]
 
 
 5
 After obtaining the search warrant, the troopers proceeded to Thatcher's trailer and found the marijuana plants described by Marcum. After this discovery, Ficklin told one of the troopers that Thatcher sometimes kept additional marijuana in a storage unit at another location. The troopers went back to the courthouse and spoke to Diekhoff about getting another warrant to search the storage unit at a location separate from Thatcher's trailer. Diekhoff prepared the second search warrant and presented it to Judge Huerte. While reviewing this second request, Huerte asked his court reporter if Diekhoff's request needed to be on record. The reporter replied in the negative. At this time, Diekhoff related the new information concerning the storage unit to Judge Huerte,[3] who approved and signed the second search warrant.[4] With the warrant in hand, the troopers went to search Thatcher's storage unit and discovered additional evidence of marijuana cultivation.
 
 II. DISCUSSION
 A. Standard of Review
 
 6
 Denial of a motion to suppress is subject to review for clear error. United States v. Wilson, 973 F.2d 577, 579 (7th Cir.1992). The inquiry in a denial of a motion to suppress is "factually based and requires ... particular deference to the district court that had the opportunity to hear the testimony and observe the demeanor of the witnesses." Id. (quoting United States v. Ferguson, 935 F.2d 1518, 1522 (7th Cir.1991).
 
 B. The Leon Standard
 
 7
 Under the Fourth Amendment of the U.S. Constitution, "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." A corollary to the Fourth Amendment, the exclusionary rule, has been developed by the courts "as 'a judicially created remedy designed to safeguard Fourth Amendment rights generally through its deterrent effect, rather than a personal constitutional right of the party aggrieved.' " United States v. Leon, 468 U.S. 897, 906 (1984) (quoting United States v. Calandra, 414 U.S. 338, 348 (1974)). The purpose of the exclusionary rule is to deter police officers from violating the Fourth Amendment's constraints on search and seizure, id. at 918-19; however, it is not constitutionally mandated that courts exclude evidence obtained in violation of the Fourth Amendment. Leon, 468 U.S. at 906; Stone v. Powell, 428 U.S. 465, 486 (1976). " 'Evidence is not suppressed when a police officer relies in objective good faith on a faulty but facially valid search warrant.' " United States v. Carter, No. 92-1956, 1993 WL 193627 at * 4 (quoting United States v. Malin, 908 F.2d 163, 166 (7th Cir.), cert. denied, 498 U.S. 991 (1990). Thus in Leon, the Supreme Court created the "good faith" exception to the exclusionary rule for situations in which law enforcement officers obtain evidence while relying in good faith upon a facially valid search warrant. Leon, 468 U.S. at 922. Leon held:
 
 
 8
 "In the absence of an allegation that the magistrate abandoned his detached and neutral role, suppression is appropriate only if the officers were dishonest or reckless in preparing their affidavit or could not have harbored an objectively reasonable belief in the existence of probable cause."
 
 
 9
 Id. at 926. Accordingly, a reviewing court may question whether the affidavit was knowingly or recklessly false, Franks v. Delaware, 438 U.S. 154 (1978), whether the magistrate acted in a neutral and detached manner, Aquilar v. Texas, 378 U.S. 108, 111 (1964),[5] or whether an affidavit "provide[s] the magistrate with a substantial basis for determining the existence of probable cause." Gates, 462 U.S. at 239; Leon, 468 U.S. at 914-15.
 
 
 10
 Thatcher claims this evidence should be suppressed because (1) Judge Pro Tem Huerte failed to act as a detached and neutral magistrate as he was unfamiliar with procedures for inssuance of a warrant; and (2) deputy prosecutor Diekhoff acted recklessly in obtaining the warrant and thus she lacked an objectively reasonable basis for believing the warrant was properly issued.
 
 
 11
 1. Judge Pro Tem Huerte did not abandon his detached and
 
 
 12
 neutral role
 
 
 13
 Thatcher contends that Huerte's "inexperience" as a judge forced him to rely on Diekhoff for advice which biased his actions involving the issuance of the search warrant causing him to become a rubber stamp in the hands of the prosecution. In Illinois v. Gates, 462 U.S. 213 (1983), the Supreme Court observed that "a magistrate's 'determination of probable cause should be paid great deference by the reviewing courts.' " Id. at 236 (quoting Spinelli, 393 U.S. at 419). Even if a judge routinely authorizes the issuance of search warrants based on "boilerplate" affidavits, it still "might be difficult for a litigant to establish how the municipal judge abandoned her neutral and detached role in evaluating warrant applications." United States v. Brown, 832 F.2d 991, 997 (7th Cir.1988). See Leon, 468 U.S. at 916 n. 14.
 
 
 14
 We are in agreement with the district court that Huerte, despite his inexperience and failure to follow the accepted procedures, did independently determine that probable cause existed for issuance of the search warrants. The record reflects that (1) Huerte was acting in the capacity of a detached and neutral judicial officer, not merely as another law enforcement officer, see Coolidge v. New Hampshire, 403 U.S. 443, 449-54 (1971); (2) that he listened to deputy prosecutor Diekhoff's oral explanation of probable cause; (3) that he read the warrant; and (4) that he signed it. While we certainly do not condone the practices employed in this case, we do not agree that the district court was clearly erroneous in holding that Judge Pro Tem Huerte acted in a neutral and detached manner when issuing the search warrant. See United States v. Rome, 809 F.2d 665, 668 (10th Cir.1987) (upholding the district court's refusal to suppress evidence even though the magistrate committed procedural errors in granting the search warrant).
 
 
 15
 2. The Police officers were neither dishonest nor reckless
 
 
 16
 in obtaining the warrant
 
 
 17
 Thatcher claims on appeal that for the purposes of the good faith exception to the exclusionary rule, Diekhoff should be characterized as a law enforcement officer, and that she acted recklessly when offering her proof of probable cause to the judge. Because Thatcher failed to raise this argument before the district court, we review the challenge under the plain error standard. "This court defines plain error as an error that resulted in an actual miscarriage of justice, which implies the conviction of one who but for the error would probably have been acquitted." United States v. Baltrunas, 957 F.2d 491, 495 (7th Cir.1992) (internal quotations omitted).
 
 
 18
 As previously stated, the exclusionary rule is a judicially created remedy designed to curb abuse of the Fourth Amendment, and the Supreme Court has limited its use to situations in which it will effectively deter future violations by police officers. In Leon, the Court stated that the suppression of evidence would not serve as a check on judicial conduct involving the issuance of warrants, but it would deter police from conducting hasty searches in violation of the Fourth Amendment: "The exclusionary rule is designed to deter police misconduct rather that to punish the errors of judges and magistrates." Leon, 468 U.S. at 916. The police officers in the case before us conducted a thorough investigation, reported their information to the deputy prosecutor, and received a facially valid warrant which they had no reason to question. We refuse to hold that a plain error occurred merely because Diekhoff, acting in good faith in her role as deputy prosecutor, made a mistake by failing to inform Judge Pro Tem Huerte that the proceeding needed to be recorded. We do not agree with the petitioner's argument that suppressing the evidence in this case would act as a deterrence to law enforcement. See id. The error in this case was the judicial officer's failure to follow the procedures, not the police officers' violation of any Fourth Amendment rights, thus the district court's decision denying Thatcher's motion to suppress the evidence is
 
 
 19
 AFFIRMED.
 
 
 
 [1]
 The district court's finding that Diekhoff placed herself under oath before communicating with Judge Huerte is consistent with Diekhoff's testimony, but Huerte was unable to recall whether Diekhoff placed herself under oath
 
 
 [2]
 The record reveals that while Judge Huerte relied upon Diekhoff to provide appropriate documents and advise him of appropriate procedure, he did not tell Diekhoff that he was relying upon her: "I assumed that she knew what she was doing. I did not tell her that I did not know what I was doing. Nor did I tell her that I was relying on her to make sure that the procedures were followed correctly."
 Upon questioning by District Court Judge McKinney regarding Diekhoff's understanding of the legal requirements relating to the recording of a probable cause hearing, Diekhoff responded that as of June 7, 1991, she was unfamiliar with the law on this matter but that she realized that it was her responsibility to remind the Judge Pro Tem of the state of the law when she made both requests for search warrants.
 Finally, the record indicates that the majority of Judge Huerte's legal practice was in the civil law area; he had not represented a criminal client in the past two years; and had no experience in the issuance of a search warrant prior to June 7, 1991.
 
 
 [3]
 The district court found that Diekhoff did not swear herself in when seeking the second search warrant but there is testimony in the record contradicting the district court's finding. Diekhoff testified that she swore herself in prior to providing Judge Huerte with information concerning the second search warrant. In addition, Judge Huerte later testified that it was possible that Diekhoff swore herself in before providing information concerning the second warrant
 
 
 [4]
 Apparently Huerte believed that both the first and second warrants were affidavits. See United States v. Thatcher, No. IP 91-86-CR, Mem. op. at 3 nn. 3-4 (D.S.D.Ind. Dec. 24, 1991) ("Huerta [sic] apparently believed that the warrant was an affidavit.... Huerta [sic] thought the second warrant, like the first, was an affidavit")
 
 
 [5]
 This circuit has held that " '[i]n the ordinary case, an officer cannot be expected to question the magistrate's probable-cause determination or his judgment that the form of the warrant is technically sufficient. Once the warrant issues, there is literally nothing more the policeman can do in seeking to comply with the law.' " Carter, 1993 WL 193627 at * 4 (quoting Leon, 468 U.S. at 921)