PUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,
*Plaintiff-Appellee,*

v.

DENVER SHELTON PRATT,
*Defendant-Appellant.*

⎱
⎰

No. 99-4424

Appeal from the United States District Court
for the District of South Carolina, at Columbia.
Dennis W. Shedd, District Judge.
(CA-98-835-DWS)

Argued: November 3, 2000

Decided: February 7, 2001

Before WIDENER, MICHAEL, and MOTZ, Circuit Judges.

---

Affirmed by published opinion. Judge Motz wrote the opinion, in
which Judge Michael joined. Judge Widener wrote a concurring opin-
ion.

---

## COUNSEL

**ARGUED:** Robert Allen Ratliff, Cincinnati, Ohio, for Appellant.
Jane Barrett Taylor, Assistant United States Attorney, Columbia,
South Carolina, for Appellee. **ON BRIEF:** J. Rene Josey, United
States Attorney, Columbia, South Carolina, for Appellee.

---

**OPINION**

DIANA GRIBBON MOTZ, Circuit Judge:

Denver Pratt, convicted of participation in a conspiracy to distribute cocaine and sentenced to 136 months imprisonment and five years supervised release, appeals his conviction and sentence. We affirm.

I.

On August 26, 1998, two deputy sheriffs stopped a rental car containing Pratt and Mario Strachan for making an improper lane change. Both Strachan and Pratt appeared nervous and when the officers returned to their patrol car to confer, they determined that the two men had given conflicting stories as to their destination. Based on this, the deputies decided to investigate further. They asked Strachan, who had rented the car, for permission to search the car, but he refused. The officers then retrieved a narcotics detection dog from their patrol car and walked the dog around the rental car. The dog indicated that he detected drugs near the trunk. Based on this, a deputy searched the trunk, where he found approximately fifteen kilograms of cocaine in a duffel bag. The officers arrested Pratt and Strachan and transported them to the sheriff's office to await the arrival of federal agents.

When Drug Enforcement Administration (DEA) agents interviewed Pratt, he admitted to knowing about the drugs in the trunk. He stated that a man known as "Blue" had brought the drugs to the hotel room in Atlanta where Strachan and Pratt had stayed the previous night. The drugs were to be delivered to a man called "Tio" in Columbia, South Carolina. Pratt had made one previous trip with Strachan to deliver drugs to Tio, for which Pratt had been paid $2000. Pratt claimed, however, that on the present trip, he was merely a passenger and Strachan had made all of the arrangements with Blue. Pratt also told the agents that his brother, Dennis Pratt, known as "Pop," had supplied the drugs.

The DEA agents found Tio's phone number in Pratt's wallet and asked Pratt and Strachan to call Tio — whose real name was Theotis

Brannon — to set up a controlled delivery. Pratt and Strachan agreed. Pratt made the first call. The DEA agents intended to record the call, but, due to problems with the equipment, only Pratt's voice was recorded. During the call, Pratt told Brannon that he and Strachan had experienced car trouble but would be arriving within a few hours. Strachan then made a second call during which both voices were recorded. In Strachan's conversation with Brannon, Strachan first acknowledged that Pratt had already called Brannon, and then told Brannon that "the stuff's there." Brannon told Strachan that he had already called Pop, Pratt's brother, to tell him that Pratt and Strachan had been delayed.

After making the telephone calls, Pratt and Strachan accompanied the DEA agents to Columbia to make the controlled delivery. Upon reaching their destination, however, Pratt decided that he no longer wished to participate in the controlled delivery. Strachan then proceeded to make the delivery himself, after which co-defendants Theotis "Tio" Brannon and Mario Kikivarakis were also arrested.

A federal grand jury returned an indictment charging Pratt with conspiracy with intent to distribute and conspiracy to distribute cocaine, in violation of 21 U.S.C. § 846 (1994). The indictment also named Mario Strachan, Theotis Brannon and Mario Kikivarakis as co-conspirators. Upon a defense motion, the district court severed Pratt's trial from that of his co-defendants. After a one-day trial, the jury convicted Pratt. At sentencing, Pratt sought a downward adjustment for his minor role in the conspiracy. The district court declined to grant the adjustment and, based on the amount of drugs attributed to Pratt, sentenced him to 136 months imprisonment and five years supervised release.

## II.

Pratt argues that the district court erred in admitting statements made by Strachan and Brannon during their recorded telephone conversation. Pratt contends that the recorded conversation between Strachan and Brannon constituted hearsay, not co-conspirator statements admissible under Fed. R. Evid. 801(d)(2)(E) because at the time the challenged statements were made, he was no longer a member of the conspiracy.

Under Fed. R. Evid. 801(c), hearsay is "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." A statement is *not* hearsay if it is "a statement by a co-conspirator of a party during the course and in furtherance of the conspiracy" and is offered against that party. Fed. R. Evid. 801(d)(2)(E). In order to admit a statement under 801(d)(2)(E), the moving party must show that (i) a conspiracy did, in fact, exist, (ii) the declarant and the defendant were members of the conspiracy, and (iii) the statement was made in the course of, and in furtherance, of the conspiracy. *See, e.g., United States v. Heater*, 63 F.3d 311, 324 (4th Cir. 1995). Idle conversation that touches on, but does not further, the purposes of the conspiracy does not constitute a statement in furtherance of a conspiracy under Rule 801(d)(2)(E). *See United States v. Urbanik*, 801 F.2d 692, 698 (4th Cir. 1986).

Many of the challenged statements in the Strachan-Brannon conversation do not constitute hearsay and thus do not require the protection of Rule 801(d)(2)(E). Hearsay is an out-of-court statement offered to prove the truth of the matter asserted therein. Few, if any, of Strachan's statements were offered to prove the truth of the matter asserted. For example, Strachan's statement that he and Pratt had car trouble was not offered to prove that they actually did experience car trouble; in fact, they did not. Such statements are admissible regardless of whether they meet the requirements of Rule 801(d)(2)(E).

Other statements, particularly from Brannon, however, arguably were admitted to prove the truth of the matter asserted. Thus, we must consider whether they constitute a co-conspirator statement under Rule 801(d)(2)(E). On appeal, Pratt argues that they do not because he was no longer a member of the conspiracy at the time of Strachan's phone call to Brannon. At trial, however, Pratt objected to the introduction of the Strachan-Brannon conversation on the ground that *Strachan* had withdrawn from the conspiracy, not that he, Pratt, had done so.[1] Accordingly, we review the admission of the statements for

---

[1] This argument fails because, even assuming Strachan had withdrawn from the conspiracy, Brannon's statements would still be admissible against Pratt, unless Pratt too had withdrawn from the conspiracy at the time of the conversation.

plain error. *See* Fed. R. Crim. P. 52(b); *United States v. Wilson*, 973 F.2d 577, 580 (7th Cir. 1992) (where defendant objected to the admission of taped co-conspirator statements on one basis at trial and a different basis on appeal, second objection was deemed waived).

To reverse for plain error, we must "(1) identify an error; (2) which is plain; (3) which affects substantial rights; and (4) which seriously affects the fairness, integrity or public reputation of judicial proceedings." *United States v. Moore*, 11 F.3d 475, 481 (4th Cir. 1993) (internal quotation marks omitted).

In the instant case, admission of the statements probably did constitute error because at the time of the Strachan-Brannon phone call, Pratt was most likely no longer a member of the conspiracy. Rather, by that time Pratt had already taken affirmative steps to withdraw from the conspiracy, namely agreeing to make a controlled delivery and telephoning Brannon in an effort to facilitate that controlled delivery. *See United States v. Walker*, 796 F.2d 43, 49 (4th Cir. 1986) (to establish withdrawal from a conspiracy, a defendant must show affirmative acts inconsistent with the object of the conspiracy and communicated in a manner reasonably calculated to reach his co-conspirators).[2] While Pratt did not communicate his withdrawal to all of his co-conspirators, he could not do so and still assist in the controlled delivery. A strict adherence to the communication requirement would, in this case, destroy the value of Pratt's cooperation with the DEA agents. This cooperation, of course, was inconsistent with the aims of the conspiracy, and thus signaled a withdrawal from it.

However, given the wealth of other evidence implicating Pratt, even assuming that the admission of this testimony constituted plain error, it did not "seriously affect[ ] the fairness, integrity or public reputation of judicial proceedings," or Pratt's "substantial rights." *Moore*, 11 F.3d at 481. Law enforcement officers caught Pratt traveling with fifteen kilograms of cocaine; he acknowledged knowing about the cocaine; he admitted that he had been paid for transporting cocaine in the past; and he provided the name and phone number of the indi-

---

[2]While Pratt never actually participated in the controlled delivery, by cooperating with the DEA agents, he took the affirmative steps necessary to signal his withdrawal from the conspiracy.

vidual who was to receive the cocaine. Thus, even without the Strachan-Brannon conversation, which, in fact, barely mentioned Pratt, the evidence against Pratt was substantial. As Pratt has failed to establish that the admission of the conversation affected the outcome of his trial, *see id.* at 482, the purported error does not require reversal.

## III.

Pratt next asserts that the district court erred in twice commenting on the evidence. The first instance occurred during the direct examination of a DEA agent, when the court asked the agent for his interpretation of Pratt's statement to Brannon, "everything cool." The second instance occurred during closing argument when defense counsel attempted to raise the contention that the initial traffic stop of Pratt and Strachan was pretextual and the result of racial profiling. The district court ruled that this argument was improper and instructed the jury that there was no evidence that the stop was racially motivated. We find that neither comment constituted error.

A judge may assist the jury in arriving at a just conclusion by explaining and commenting on the evidence, by drawing the jury's attention to the parts of the evidence he or she thinks are important, and by expressing an opinion, provided that the judge informs the jury that all matters of fact are subject to their determination. *See Quercia v. United States*, 289 U.S. 466, 469 (1933). While the judge may analyze and dissect the evidence, the judge may not distort or add to it. *See id.* at 470.

The district court's question to Agent Marsh was within its discretion. The court did not emphasize, explain, or even comment on the evidence, but merely asked a question to clarify witness testimony. Nor did the court comment on the answer given. Furthermore, during his charge to the jury, the district judge gave the following instruction: "Let me caution you, if during the trial, I have made some statement which possibly could be construed by you as a comment on the evidence in this case, you should disregard any such comment, as the rule is clear that the credibility and the weight to be given evidence is solely for your determination." This instruction adequately

informed the jurors that they were the final arbiters of all factual matters.

The district court also acted within its discretion in issuing an instruction during defense counsel's closing argument. Before trial, Pratt moved to suppress both his statements and the cocaine because of the alleged illegality of the traffic stop; the district court denied the suppression motion and Pratt does not appeal that denial. None of the evidence adduced at trial indicated that the stop of Strachan and Pratt was pretextual or based on race. To the contrary, the law enforcement officers steadfastly maintained that the stop was based on an improper lane change. Given this, defense counsel had no basis for arguing that the stop was based on race or any other impermissible consideration. *See United States v. Wilson*, 135 F.3d 291, 298 (4th Cir. 1998) (a closing argument must be limited to the facts in evidence or reasonable inferences drawn therefrom). The district court did not err in sustaining the government's objection to this line of argument and in issuing a curative instruction to the jury.

## IV.

Pratt maintains that his relative lack of culpability within the overall conspiracy entitled him to at least a two-level downward adjustment in his sentence. A defendant has the burden of proving, by a preponderance of the evidence, that he is entitled to a mitigating role adjustment in sentencing. *See, e.g., United States v. Gates*, 967 F.2d 497, 501 (11th Cir. 1992). Section 3B1.2 of the Sentencing Guidelines, which provides for a downward adjustment based on the defendant's role in the offense, provides, in pertinent part:

> Based on the defendant's role in the offense, decrease the offense level as follows:
>
> (a) If the defendant was a minimal participant in any criminal activity, decrease by 4 levels.
>
> (b) If the defendant was a minor participant in any criminal activity, decrease by 2 levels.
>
> In cases falling between (a) and (b), decrease by 3 levels.

An application note to the Guideline explains that subsection (a) "applies to a defendant who plays a minimal role in concerted activity. It is intended to cover defendants who are plainly among the least culpable of those involved in the conduct of a group." USSG § 3B1.2, comment. (n.1). For the purposes of subsection (b), "a minor participant means any participant who is less culpable than most other participants, but whose role could not be described as minimal." USSG § 3B1.2, comment. (n.3).

Our precedent makes clear that "mitigating role adjustments apply only when there has been group conduct and a particular defendant is less culpable than other members of the group to such a degree that a distinction should be made at sentencing between him and the other participants." *United States v. Gordon*, 895 F.2d 932, 935 (4th Cir. 1990). However, whether a role in the offense adjustment is warranted "is to be determined not only by comparing the acts of each participant in relation to the relevant conduct for which the participant is held accountable, but also by measuring each participant's individual acts and relative culpability against the elements of the offense of conviction." *United States v. Palinkas*, 938 F.2d 456, 460 (4th Cir. 1991) (internal quotation marks omitted). "The critical inquiry is thus not just whether the defendant has done fewer 'bad acts' than his co-defendants, but whether the defendant's conduct is material or essential to committing the offense." *Id.*

Applying these principles, we can only hold that the district court's finding that Pratt was a "major player" in the cocaine conspiracy, and therefore not deserving of a downward adjustment for his role in the offense, was not clearly erroneous. *See United States v. Withers*, 100 F.3d 1142, 1147 (4th Cir. 1996) ("We review role in the offense adjustments for clear error."). Evidence in the record plainly supports the conclusion that Pratt was not just a "minor participant" in the conspiracy. For example, Pratt was aware of the cocaine in the car; Brannon's number was found in Pratt's possession; and Pratt admitted to having been paid to transport cocaine for this same group of conspirators in the past. Furthermore, nothing indicates that Pratt was any less culpable than, for example, Strachan. Pratt argues that he merely provided company for Strachan, but the facts belie that argument. That Strachan rented the hotel room and the car could be mere happenstance, and does not lessen Pratt's involvement. Pratt accompanied

Strachan through every part of his journey to deliver the drugs to Brannon, and Brannon's number was found in Pratt's wallet, not Strachan's.

Thus, there was ample evidence from which the district court could conclude that Pratt was neither a minor participant in the conspiracy nor less culpable than the other participants, and therefore not deserving of a downward adjustment under USSG § 3B1.2.

V.

Finally, Pratt contends that the term of supervised release imposed by the district court — five years — runs afoul of the Supreme Court's recent decision in *Apprendi v. New Jersey*, ___ U.S. ___, 120 S. Ct. 2348 (2000), because it assertedly exceeds the maximum term of supervised release permitted by statute — three years — and the increase was based on drug amounts which were not alleged in the indictment, or submitted to the jury.

Pratt did not raise this argument in the district court, thus our review is for plain error only. *See* Fed. R. Crim. P. 52(b); *United States v. Lewis*, No. 00-4016, 2000 WL 1853376, at *3 n.4 (4th Cir. Dec. 19, 2000) (citing *United States v. Olano*, 507 U.S. 725, 731-32 (1993); *United States v. Meshack*, 225 F.3d 556, 575 (5th Cir. 2000)). To reverse, then, we must identify a plain error that affected Pratt's substantial rights and which "seriously affects the fairness, integrity or public reputation of judicial proceedings." *Moore*, 11 F.3d at 481.

In *Apprendi*, the Supreme Court announced a new rule of constitutional law: "Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Apprendi*, 120 S. Ct. at 2362-63. Although *Apprendi* itself involved a hate crimes statute, courts have applied the rule announced in *Apprendi* to drug amounts. *See, e.g., United States v. Aguayo-Delgado*, 220 F.3d 926, 932-33 (8th Cir. 2000). The *Apprendi* rule only applies, however, "where the non-jury factual determination increases the maximum sentence beyond the statutory range authorized by the jury's verdict." *Aguayo-Delgado*, 220 F.3d at 933. Under *McMillan v. Pennsylvania*, 477 U.S. 79, 81-93 (1986), the legislature

may "raise the minimum penalty associated with a crime based on non-jury factual findings, as long as the penalty is within the range specified for the crime for which the defendant was convicted." *Aguayo-Delgado*, 220 F.3d at 934.

At sentencing, the district court held Pratt responsible for the fifteen kilograms of cocaine found in the trunk of the rental car. Attributing these drugs to Pratt, the court sentenced Pratt under 21 U.S.C. § 841(b)(1)(A)(ii) (1994) (which authorizes a term of imprisonment from ten years to life and a term of supervised release of at least five years) to 136 months imprisonment and five years supervised release. Because the amount of drugs attributed to Pratt was not determined by the jury, Pratt maintains that the sentence imposed on him violates the *Apprendi* rule. Specifically, he claims that 21 U.S.C. § 841(b)(1)(C) (Supp. II 1996), which establishes the penalties for violations of 21 U.S.C. § 841(a) without regard to drug amount, mandates a term of imprisonment of not more than twenty years and, when combined with 18 U.S.C. § 3583 (1994), a term of supervised release of not more than three years, and that his five-year term of supervised release exceeds this asserted statutory maximum.[3]

Despite Pratt's protestations to the contrary, three years is *not* the maximum term of supervised release permitted by § 841(b)(1)(C). Section 841(b)(1)(C) states that "[a]ny sentence imposing a term of imprisonment under this paragraph shall, in the absence of . . . a prior conviction, impose a term of supervised release of *at least* 3 years." 21 U.S.C. § 841(b)(1)(C) (emphasis added). Thus, three years is only the *minimum* term of supervised release permitted by § 841(b)(1)(C).

Pratt's reliance on 18 U.S.C. § 3583 is misplaced; § 3583 does not cap the period of supervised release that a district court may impose under § 841(b)(1)(C). *See* 18 U.S.C. § 3583. Section 3583 states that "[e]xcept as otherwise provided, the authorized term[ ] of supervised release . . . for a Class C . . . felony [is] not more than three years."

---

[3]For the purposes of this appeal, we assume without deciding that the maximum term of imprisonment for a violation of § 841(a) without regard to drug amount is twenty years. Pratt's term of imprisonment clearly complies with this statutory maximum because, at 136 months, it is less than twenty years (240 months).

18 U.S.C. § 3583(b)(2). This statutory cap, however, does not apply to statutes, such as § 841(b)(1)(C), whose own mandatory *minimum* periods of supervised release are the same as, or exceed, the *maximum* periods provided by § 3583. *See United States v. Good*, 25 F.3d 218, 220 n.3 (4th Cir. 1994) ("By including the words 'except as otherwise provided' this statute creates an exception for those special statutes, such as the drug offenses, which carry their own mandatory minimum periods of supervised release.");[4] *see also United States v. Garcia*, 112 F.3d 395, 397-98 (9th Cir. 1997); *United States v. Mora*, 22 F.3d 409, 412 (2d Cir. 1994); *United States v. LeMay*, 952 F.2d 995, 998 (8th Cir. 1991). *But see United States v. Kelly*, 974 F.2d 22, 24-25 (5th Cir. 1992).

If we were to hold that § 3583's three-year maximum term of supervised release applied to Pratt's sentence, we would render § 841(b)(1)(C)'s use of the words "*at least* three years" superfluous. 21 U.S.C. § 841(b)(1)(C) (emphasis added). Not only would this violate our duty to give effect, where possible, "to every clause and word of a statute," *United States v. Menasche*, 348 U.S. 528, 538-39 (1955), but also it seems apparent from this language that Congress *intended* to permit courts to impose terms of supervised release of more than three years for violations of § 841(a). Indeed, the supervised release terms in § 841 were added to the statute at the same time Congress amended § 3583(b) by adding the introductory phrase "[e]xcept as otherwise provided." *See Garcia*, 112 F.3d at 398 (citing

---

[4]Where, however, a statute's mandatory minimum period of supervised release is *less* than the maximum term permitted by § 3583, *Good* indicates that § 3583's statutory cap does apply. *See Good*, 25 F.3d at 221. We recognize that this rule, combined with our holding today, creates a somewhat anomalous result: a defendant convicted under 21 U.S.C. § 841(b)(1)(C), could, in theory, receive a term of supervised release of up to life, whereas a defendant convicted under 21 U.S.C. § 841(b)(1)(B), which punishes more serious offenses than § 841(b)(1)(C) cannot receive a term of supervised release of more than five years. *Compare* 21 U.S.C. § 841(b)(1)(B) *with* 18 U.S.C. § 3583(b)(1); *see also Good*, 25 F.3d at 220-21 & n.3. Such a counterintuitive result makes us wonder if the rule announced in *Good* should be limited to the facts of that case, or perhaps even partially overruled. However, as the question posed by the instant case is limited to § 3583's effect on § 841(b)(1)(C), we need not reach that question here.

Act of Oct. 27, 1986, Pub.L. No. 99-570, 1986 U.S.C.C.A.N. (100 Stat.) 3207). For these reasons, we hold that where a statute's mandatory minimum term of supervised release is the same as, or exceeds, § 3583's maximum terms, § 3583's maximum terms do not apply.

Because § 3583 does not apply to § 841(b)(1)(C), Pratt's five-year term of supervised release does not exceed the maximum term of supervised release permitted by statute. As a result, Pratt's supervised release term cannot run afoul of *Apprendi*, which only applies to sentences "beyond the prescribed statutory maximum." *Apprendi*, 120 S. Ct. at 2362-63. Thus, there is no basis for overturning Pratt's sentence.[5]

## VI.

For the foregoing reasons, the conviction and resulting sentence are hereby

*AFFIRMED*.

WIDENER, Circuit Judge, concurring:

I concur in the result.

---

[5] We realize that this result puts us at odds with the Fifth Circuit's recent decision in *Meshack*. *See* 225 F.3d at 578 (reducing five-year term of supervised release to three years in light of *Apprendi*). However, unlike the Fifth Circuit, we decline to hold that the maximum term of supervised release permitted by § 841(b)(1)(C) is three years.