**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 15-4182**

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

NICOLE FELICIA CLARK, a/k/a Mo,

Defendant - Appellant.

Appeal from the United States District Court for the Eastern District of Virginia, at Norfolk. Mark S. Davis, District Judge. (2:14-cr-00008-MSD-DEM-1)

Argued: October 26, 2016          Decided: December 16, 2016

Before DUNCAN and AGEE, Circuit Judges, and Bruce H. HENDRICKS, United States District Judge for the District of South Carolina, sitting by designation.

Affirmed by unpublished per curiam opinion.

**ARGUED:** Harry Dennis Harmon, Jr., Norfolk, Virginia, for Appellant. Darryl James Mitchell, OFFICE OF THE UNITED STATES ATTORNEY, Norfolk, Virginia, for Appellee. **ON BRIEF:** Dana J. Boente, United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Alexandria, Virginia, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

On December 2-4, 2014, in the U.S. District Court for the Eastern District of Virginia, Norfolk Division, defendant Nicole Felicia Clark was tried before a jury on a four-count superseding indictment. Count one of the superseding indictment charged Clark with conspiracy to distribute and possession with intent to distribute cocaine and heroin, in violation of Title 21 of the United States Code §§ 846, 841(a)(1) and (b)(1)(A). Count two of the superseding indictment charged her with possession with intent to distribute heroin, in violation of Title 21 of the United States Code §§ 841(a)(1) and (b)(1)(A). Counts three and four of the superseding indictment charged her with possession with intent to distribute heroin, in violation of Title 21 of the United States Code §§ 841(a)(1) and (b)(1)(A). Clark elected to proceed pro se during the trial, and on December 4, 2014, she was found guilty of all four counts.

Clark continued to represent herself during the sentencing phase of the case. The district court, inter alia, applied a two-level sentencing enhancement for maintaining a drug-related premises and sentenced Clark to 240 months' imprisonment on each of the four counts, with these terms of confinement to run concurrently. During the sentencing phase, Clark objected to certain paragraphs of the presentence report; however, she did

2

not object to the paragraphs that pertained to the sentencing enhancement for maintaining a drug-related premises. This specific enhancement increased Clark's advisory guidelines range from 188-235 months' imprisonment to 235-293 months.

Clark objected to the appointment of counsel to represent her on appeal. However, she agreed to the appointment of standby counsel. Standby counsel filed a brief in this Court pursuant to Anders v. California, 386 U.S. 738 (1967), inter alia, inviting the Court to review the entire record in order to determine whether there existed any non-frivolous issue for appeal. On March 3, 2016, the Court directed the parties to file supplemental briefs addressing whether sufficient evidence supported the sentencing enhancement for maintaining a drug-related premises. After appropriate briefing and oral argument and for the reasons stated below, we affirm the defendant's sentence.

I.

Clark contends that the sentencing enhancement applied under U.S.S.G. § 2D1.1(b)(12) for maintaining a drug-related premises was not supported by sufficient evidence.

Ordinarily, we review a district court's application of the sentencing guidelines de novo and its factual findings for clear error. United States v. Strieper, 666 F.3d 288, 292 (4th Cir.

2012). However, where a defendant fails to object in the district court, thus denying the district court the opportunity to consider the purported error, such a defendant's challenge to the application of the guidelines is reviewed for plain error on appeal. United States v. Hargrove, 625 F.3d 170, 184 (4th Cir. 2010). Clark failed to object to the § 2D1.1(b)(12) enhancement, and we review the application of the enhancement for plain error accordingly.

To establish plain error, Clark must show that (1) the district court erred, (2) the error was plain, and (3) the error affected her substantial rights. United States v. Olano, 507 U.S. 725, 732–34 (1993). A "plain" error is one that is "clear" or "obvious," id. at 734, under "the settled law of the Supreme Court or this circuit." United States v. Carthorne, 726 F.3d 503, 516 (4th Cir. 2013) (citation omitted). In other words, the presence of the error must be beyond reasonable dispute. See United States v. Marcus, 560 U.S. 258, 262 (2010). Because Clark has not shown that the district court committed plain error, we affirm.

## II.

The Sentencing Guidelines allow for a two-level enhancement to a defendant's offense level "[i]f the defendant maintained a premises for the purpose of manufacturing or distributing a

4

controlled substance." U.S.S.G. § 2D1.1(b)(12). According to the applicable commentary, "[a]mong the factors the court should consider in determining whether the defendant 'maintained' the premises are (A) whether the defendant held a possessory interest in (e.g., owned or rented) the premises and (B) the extent to which the defendant controlled access to, or activities at, the premises." Id. § 2D1.1 cmt. n. 17. Moreover, "[m]anufacturing or distributing a controlled substance need not be the sole purpose for which the premises was maintained, but must be one of the defendant's primary or principal uses for the premises, rather than one of the defendant's incidental or collateral uses for the premises." Id.

Clark argues that the two-level sentencing enhancement was not supported by the evidence because: (1) she only delivered illegal drugs to the premises and stayed overnight until they were sold; (2) she did not have a possessory interest in, or control access to, the premises; and (3) she did not maintain the premises for the purpose of storing, manufacturing, or distributing illegal drugs. The government responds that the evidence demonstrated the apartment in question served as a warehouse and distribution hub for Clark's and her coconspirators' drug-trafficking business, making the application of the sentencing enhancement against Clark

5

permissible. We agree with the government and find no plain error in the application of the § 2D1.1(b)(12) enhancement.

## III.

The premises at issue is an apartment on East Ocean View Avenue ("Ocean View apartment" or "the apartment") in Norfolk, Virginia. Dedrick Leary ("Leary"), a government witness, testified that he assumed occupancy of the Ocean View apartment in 2012 with his associate Demetrius Lee ("Lee"). J.A. 169–71. Leary paid rent "to the tenant who was supposed to occupy [the apartment]" over the course of approximately one year, but was never the leaseholder. Id. 170–71. Soon after Leary and Lee occupied the apartment, Quincy Freeman ("Freeman") began staying there with Lee and began using the apartment for his drug trafficking activities. Id. 171–72, 179. Freeman, a government witness, acknowledged that the Ocean View apartment was used for the storage and distribution of cocaine and heroin. Id. 100.

Freeman identified Clark as a member of his drug distribution organization whose job it was to "drive the cocaine from Atlanta to Virginia." Id. 88–94. The drugs that Clark transported to Virginia were usually stored at the Ocean View apartment. Id. 99–100. Clark transported cocaine and heroin from Atlanta and delivered the drugs to Freeman in Virginia "at least five to ten times" during the conspiracy. Id. 106–07.

6

Clark transported cocaine from Atlanta to Virginia in quantities ranging from three to fifteen kilograms. Id. 109–11. She transported heroin from Atlanta to Virginia in one to three kilogram quantities. Id. 111–14. Most of these drugs were delivered by Clark to Freeman directly at the Ocean View apartment. Id. 115.

According to Freeman, after Clark, an Atlanta resident, delivered drugs to him at the apartment she would stay there overnight. Id. 120, 138–40. During these periods, she had access to the entire apartment, including the back room where the drugs and money were stored. Id. 139. Clark would sometimes wait in Norfolk until Freeman finished selling the drugs from her previous delivery in order to transport the full proceeds back to Atlanta. Id. 139–40. In these instances, Clark would remain at the Ocean View apartment for more than one night. Id.

Leary testified that he helped Clark and coconspirators "stretch" the cocaine at the Ocean View apartment. Id. 176–77, 186–87. This process involved adding a dietary food supplement to the cocaine to increase its weight. Id. 176. Leary further testified that he observed a handgun at the apartment, and Clark later asked him and Lee where she could get a bigger gun, because the handgun present was too small in her opinion. Id. 192–93. According to Leary, Clark made an additional delivery

of cocaine after Freeman's arrest and began staying at the apartment for "extended periods." Id.

Joseph McPherson ("McPherson"), a government witness, testified that he purchased cocaine from Freeman at the apartment during the conspiracy. Id. 226. According to McPherson, after Freeman was arrested in May 2013, McPherson went to the apartment where he saw Clark and a coconspirator. Id. 232–33. At that time, Clark told McPherson that when Freeman was arrested there had been a kilogram of heroin in the apartment but it had since been stolen. Id. 233.

We find that the foregoing constitutes sufficient evidence to support application of the § 2D1.1(b)(12) enhancement under plain error review. Certainly, the evidence outlined above establishes that "[m]anufacturing or distributing a controlled substance . . . [was] one of [Clark's and her coconspirators'] primary or principal uses for the premises." U.S.S.G. § 2D1.1 cmt n. 17. Clark argues that neither Freeman's nor Leary's testimony established that she distributed drugs from the premises. Rather, she asserts, it was Freeman, Leary, and Lee exclusively who used the premises to store, manufacture, and distribute controlled substances. But it is of little import that Clark did not personally provide cocaine and heroin to mid-level dealers and end users. Clark was an indispensable link in Freeman's drug distribution chain, and the conduct of which she

8

was found guilty played an integral part in establishing the principal use for the premises.

The issue of whether Clark "maintained" the premises is a close call under the guidance provided in the commentary. Courts are instructed to consider "whether the defendant held a possessory interest" in the premises and "the extent to which the defendant controlled" access and activities therein, as "[a]mong the factors" relevant to the determination. See id. The Seventh Circuit described the related inquiry with regard to maintaining a drug-involved premises in violation of 21 U.S.C. § 856 in this way: "[A]n individual 'maintains' a drug house if he owns or rents premises, or exercises control over them, and for a sustained period of time, uses those premises to manufacture, store, or sell drugs, or directs others to those premises to obtain drugs." United States v. Acosta, 534 F.3d 574, 591 (7th Cir. 2008).

In this case, Clark did not own or rent the premises, thus eliminating the typical examples of a possessory interest in the apartment. However, there is evidence that she stayed overnight at the Ocean View apartment regularly and had full access to the apartment when she stayed there, including the portion of the apartment that was used to store large quantities of drugs and money. Moreover, Clark had access to a firearm at the premises, a weapon kept for protection due to the dangerous nature of the

activities occurring there. Thus, the issue distills to whether plenary access equals "control" under these facts.

It appears that there is no case law within this circuit that speaks directly to this scenario, and the parties do not offer any. However, this Court has issued an unpublished case that bears some relevance. In United States v. Christian, the Court found sufficient control such that § 2D1.1(b)(12) applied even though the defendant did not own or lease the premises at issue, where the defendant: (1) "traveled regularly between [the apartment] and the place where he distributed drugs"; (2) "had a key to the apartment, and stayed there regularly but not exclusively"; and, (3) "'controlled' a chest and a safe in the master bedroom, which contained a great deal of money and drugs, as well as two firearms." 544 F. App'x 188, 191 (4th Cir. 2013).

Notably, in many cases where the defendant did not own or rent the premises, but control was deemed to exist for purposes of § 2D1.1(b)(12), the defendant had a key to the premises. See, e.g., United States v. Renteria-Saldana, 755 F.3d 856, 859 (8th Cir.), cert. denied, 135 S. Ct. 423, 190 L. Ed. 2d 307 (2014) (finding enhancement proper where the defendant did not own or reside at the stash house, but exercised control over it by possessing a key to the premises, paying the utility bills, regularly picking up drugs there, and bringing drug-sale

10

proceeds there for retrieval by other conspirators); United States v. Jones, 778 F.3d 375, 385 (1st Cir. 2015) (finding enhancement proper where the defendant did not own or rent the premises because the defendant's control was demonstrated by the facts that he had a key to the premises, came and went at will, and slept there whenever he pleased); but see United States v. Evans, 826 F.3d 934, 938 (7th Cir. 2016) (noting that the defendant did not have a key, but nevertheless finding that control existed).

In the instant matter, the record is silent as to whether Clark had a key to the Ocean View apartment or specifically controlled any items within the apartment. In truth, there was no impetus for the government to offer evidence on these particular points, whether at trial or at sentencing, because the offenses of conviction did not require such proof and Clark did not object to the § 2D1.1(b)(12) enhancement. The silence of the record on these points partially limits our analysis and demonstrates why objections in the trial court are not only preferable as a procedural matter, but lead to a different standard of review.

Ultimately, we find that the trial testimony describing Clark's regular stays at the Ocean View apartment, her plenary access thereto, and her integral participation in the rampant drug activity therein is enough to confirm that she "controlled"

11

the premises and thus "maintained" it for drug-related purposes. See U.S.S.G. § 2D1.1 cmt n. 17. The evidence established that Clark: (1) delivered drugs to the apartment on multiple occasions; (2) occupied the apartment with full knowledge of the kilogram quantities of cocaine and heroin, drug-related cash proceeds, and a firearm stored there; (3) received drugs at the apartment as compensation for her role in the scheme; (4) lodged at the apartment overnight for the exclusive purpose of advancing the drug trafficking business; (5) along with her coconspirators, "stretched" drugs at the apartment to improve the profits of the drug trade; (6) sought a larger firearm in order to aid in controlling access and activities at the apartment; (7) made an additional delivery to the apartment and stayed there for "extended periods" after one of her coconspirators was arrested; and (8) devoted her activities at the apartment solely to the drug distribution operation.

Under these circumstances, we cannot conclude that the district court committed "clear" or "obvious" error by applying the § 2D1.1(b)(12) enhancement. See Olano, 507 U.S. at 732–34. Neither has Clark shown that the district court violated settled law of the Supreme Court or this circuit. See Carthorne, 726 F.3d at 516. The sentence is affirmed.

AFFIRMED

12