**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 16-4358**

UNITED STATES OF AMERICA,

                    Plaintiff – Appellee,

          v.

BOLIVAR HERNANDEZ CARBAJAL,

                    Defendant – Appellant.

Appeal from the United States District Court for the Middle District of North Carolina, at Greensboro.  James A. Beaty, Jr., Senior District Judge.  (1:15-cr-00364-JAB-5)

Argued:  October 26, 2017                          Decided:  January 31, 2018

Before GREGORY, Chief Judge, KEENAN, Circuit Judge, and SHEDD, Senior Circuit Judge.

Affirmed in part, vacated in part, and remanded by unpublished opinion.  Chief Judge Gregory wrote the opinion, in which Judge Keenan and Senior Judge Shedd concur.

**ARGUED:**  Wallace H. Jordan, Jr., WALLACE H. JORDAN, JR., PC, Florence, South Carolina, for Appellant.  Sandra Jane Hairston, OFFICE OF THE UNITED STATES ATTORNEY, Greensboro, North Carolina, for Appellee.  **ON BRIEF:**  Ripley Rand, United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Greensboro, North Carolina, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

GREGORY, Chief Judge:

In January 2016, Bolivar Hernandez Carbajal pleaded guilty to a single count of conspiracy to distribute cocaine. The district court found that under the U.S. Sentencing Guidelines ("Guidelines"), Carbajal had a total offense level of 29 and a criminal history category of I, which resulted in an imprisonment range of 87 to 108 months. The district court sentenced Carbajal to 98 months in prison. Carbajal now appeals his sentence.

First, he challenges the district court's grant of a two-level enhancement for maintaining an apartment in Durham, North Carolina, for the purpose of manufacturing or distributing drugs. Because the record contained evidence sufficient to support the conclusion that Carbajal controlled access to and activities at the apartment, we affirm the district court's application of the enhancement.

Second, Carbajal challenges the district court's denial of a two-level reduction for being a minor participant in the conspiracy. In November 2015, the Sentencing Commission issued Amendment 794, which clarified the standard that courts should use when applying the minor-participant reduction. Because the record is unclear as to whether the district court considered the factors required by the amended standard, we vacate in part and remand for resentencing.

I.

The government stumbled across Carbajal while investigating illegal drug trafficking by Abel Espinoza Garcia in Siler City, North Carolina. Drug Enforcement Administration ("DEA") agents determined that Garcia received multiple kilograms of

cocaine from shipments transported by Marcos Perez Doval. Doval frequently delivered large amounts of money to a cocaine supplier in Texas and Mexico and regularly brought back cocaine to 3300 Shannon Road, Apartment 8A, in Durham, North Carolina ("Apartment 8A").

Carbajal drove a silver Volkswagen Jetta, which DEA agents first spotted at Apartment 8A in March or April 2015. Doval and Carbajal were the individuals most frequently seen at the apartment. Using a utility pole surveillance camera, the agents observed Doval and Carbajal at the apartment at least five or ten times between April and mid-May 2015. On numerous occasions they carried coolers. Phillip Richard, a lieutenant with the Chatham County Sheriff's Office assigned to the DEA's task force in Greensboro, testified at sentencing that drug traffickers commonly use coolers to transport drugs and money. Carbajal went in and out of Apartment 8A freely, left his car out front from one day to the next, and opened the apartment door for other people from the inside. Only Carbajal was seen carrying suitcases into Apartment 8A.

The record is unclear about who owned or leased Apartment 8A, but it is undisputed that the lessee was not Carbajal, who lived at the time in Elgin, Illinois. There is also no evidence that Carbajal had a key to the apartment or actually spent the night there.

On May 16, 2015, DEA agents watched Carbajal drive his silver Jetta from Apartment 8A to a nearby garage that Doval used to store his car. Carbajal met Doval and an unidentified woman, who placed a cooler and a suitcase in Carbajal's car. Then Carbajal drove Doval and the woman back to Apartment 8A. There, DEA agents detained Doval, Carbajal, and the woman while a K-9 walked around Carbajal's car. After a positive alert,

3

the agents searched the car and located 8.98 kilograms of cocaine in the cooler, as well as the garage door opener for the nearby garage.

The DEA agents obtained a search warrant and searched Apartment 8A that same day. Richard participated in the search and testified at sentencing that the apartment appeared to be a stash house: it contained packaging materials consistent with manufacturing and packaging drugs but almost no furniture, and it was not set up "for living conditions." J.A. 26. The DEA agents also located documents in the names of Doval and Carbajal, and a suitcase containing unidentified male clothing. Under a second warrant, the agents searched the nearby garage, where they located shrink wrap packaging and Doval's car, which had a hidden compartment along the entire length of the dashboard.

In October 2015, a federal grand jury indicted Carbajal, Doval, and five other codefendants for a single count of distributing cocaine in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(C), and 846. Garcia and six other related defendants were indicted separately. Carbajal pleaded guilty on January 5, 2016.

In the presentence report, the probation officer concluded that Carbajal was accountable for the 8.98 kilograms of cocaine recovered on May 16, 2016, and thus had a base offense level of 30. The probation officer applied a two-level increase for maintaining a premises for the purpose of distributing drugs (U.S. Sentencing Guidelines Manual § 2D1.1(b)(12) (U.S. Sentencing Comm'n 2015)), and a three-level decrease for accepting responsibility (U.S. Sentencing Guidelines Manual §§ 3E1.1(a), (b) (U.S. Sentencing Comm'n 2015)). With a total offense level of 29 and a criminal history category of I, the Guidelines recommended a sentence of 87 to 108 months. Carbajal objected to the two-

4

level increase and also contended that he qualified for a two-level decrease for playing only a minor role in the offense (U.S. Sentencing Guidelines Manual §3B1.2(b) (U.S. Sentencing Comm'n 2015)).

The district court held a sentencing hearing on May 11, 2016, and denied both of Carbajal's challenges. The court sentenced Carbajal to 98 months imprisonment, the same sentence the court imposed earlier that day on Doval.

## II.

This Court has jurisdiction under 28 U.S.C. § 1291. "We review the sentence imposed by a district court under a 'deferential abuse-of-discretion standard.' We review factual findings for clear error, and legal conclusions de novo." *United States v. Davis*, 679 F.3d 177, 182 (4th Cir. 2012) (quoting *Gall v. United States*, 552 U.S. 38, 40 (2007)).

## A.

First, Carbajal challenges the application of a two-level enhancement for "maintain[ing] a premises for the purpose of manufacturing or distributing a controlled substance." §2D1.1(b)(12) (the "premises enhancement"). Carbajal argues that the government has not met its burden to show by preponderance of the evidence that he maintained Apartment 8A. *See* U.S. Sentencing Guidelines §6A1.3(a) cmt. (U.S. Sentencing Comm'n 2015).

To determine whether a defendant "maintained" a premises, a court should consider "(A) whether the defendant held a possessory interest in (*e.g.*, owned or rented) the premises and (B) the extent to which the defendant controlled access to, or activities at, the

5

premises." §2D1.1 cmt. n.17. "Manufacturing or distributing a controlled substance need not be the sole purpose for which the premises was maintained, but must be one of the defendant's primary or principal uses for the premises, rather than one of the defendant's incidental or collateral uses[.]" *Id.* "Maintaining" a premises encompasses storing a controlled substance "for the purpose of distribution." *Id.* The sentencing court should consider "how frequently the premises was used by the defendant for manufacturing or distributing a controlled substance and how frequently the premises was used by the defendant for lawful purposes." *Id.*

Here, both sides agree that Carbajal did not have a possessory interest in the apartment. Carbajal also does not dispute that the primary use—indeed, the sole use—of Apartment 8A was for the storage and distribution of drugs. Thus, the only question this Court must answer is whether the district court erred in finding that Carbajal "knowingly maintain[ed]" Apartment 8A by "controll[ing] access to, or activities at, the premises." *Id.*

This Court has not issued a published opinion construing the premises enhancement, so we look to our unpublished cases for persuasive authority. Several of these cases suggest that application of the premises enhancement is a fact-specific inquiry that considers the totality of the circumstances. In *United States v. Clark*, for example, this Court upheld the application of the premises enhancement even though the apartment was owned and rented by others, Clark lived in a different state, and there was no evidence that she had a key. 665 F. App'x 298, 301, 303 (4th Cir. 2016) (per curiam). The panel concluded that "Clark's regular stays at the Ocean View apartment, her plenary access thereto, and her integral participation in the rampant drug activity therein is enough to confirm that she

'controlled' the premises and thus 'maintained' it for drug-related purposes." *Id.* at 303–04 (listing eight pieces of evidence). Likewise, in *United States v. Christian*, this Court upheld application of the enhancement even though Christian did not own, lease, or pay expenses for the apartment, nor live there exclusively. 544 F. App'x 188, 190–91 (4th Cir. 2013) (per curiam). The panel found sufficient evidence of control because Christian (1) regularly travelled between the apartment and the place where he distributed drugs; (2) had a key to the apartment and stayed there regularly; and (3) "'controlled' a chest and a safe in the master bedroom, which contained a great deal of money and drugs, as well as two firearms." *Id.*

The other federal circuit courts have likewise employed a fact-specific, totality-of-the-circumstances approach to applying the premises enhancement. *E.g.*, *United States v. George*, 872 F.3d 1197, 1205–06 (11th Cir. 2017) (collecting cases); *United States v. Jones*, 778 F.3d 375, 385–86 (1st Cir. 2015) (upholding application of the enhancement to an apartment in which Jones lacked a possessory interest because Jones (1) had a key; (2) "came and went at will"; (3) "slept there whenever he pleased"; (4) was the only person to keep clothes and toiletries there; (5) furnished a key to his coconspirator; and (6) delivered rent payments); *United States v. Garcia*, 774 F.3d 472, 475 (8th Cir. 2014) (per curiam) (upholding application of the enhancement to a house in which Garcia lacked a possessory interest because he had free access to the premises, mowed the lawn, took out the garbage, and regularly used the garage to store materials necessary for the drug conspiracy); *United States v. Flores-Olague*, 717 F.3d 526, 532–34 (7th Cir. 2013) (considering a variety of factors, including the "frequency and significance of the illicit activities," the storage of

7

drug paraphernalia, and the authoritarian treatment of the home's co-residents, to conclude that Flores-Olague used his home for drug-related purposes); *United States v. Miller*, 698 F.3d 699, 705–07 (8th Cir. 2012) (considering a variety of factors, including the maintenance of business records, interactions with customers, acceptance of payment, and number of drug transactions, to determine that the principal use of a residence was drug trafficking).

Carbajal challenges the district court's conclusion by distinguishing the facts of his case from the evidence that several of the other federal circuit courts have considered sufficient to warrant application of the premises enhancement. Appellant Br. 7–8, 9–10 (citing *Jones*, 778 F.3d at 385; *Garcia*, 774 F.3d at 475; *United States v. Bell*, 766 F.3d 634 (6th Cir. 2014)). But Carbajal's argument is unavailing for the very reason articulated by the Sixth Circuit in *Bell*: although a court might find some facts *sufficient* to support application of the enhancement in one case, those same facts do not become *necessary* for application of the enhancement in every case. 766 F.3d at 637–38.

Here, the facts presented to the district court are sufficient to conclude that Carbajal "controlled access to, or activities at, the premises," §2D1.1 cmt. n.17: (1) Carbajal went in and out of the apartment freely, and sometimes opened the door for others from inside; (2) he was seen at the apartment five to ten times between April and mid-May 2015; (3) he and Doval carried coolers, which are often used to transport drugs, into and out of the apartment numerous times; (4) he was the only person seen carrying a suitcase into the apartment, and DEA agents located a suitcase with male clothing in the apartment; (5) he

parked his car in front of the apartment overnight; and (6) at least one document with Carbajal's name on it was in the apartment.

While none of these facts alone is dispositive, the sum total of the evidence reveals that the district court did not clearly err in concluding that Carbajal "maintained" Apartment 8A "for the purpose of manufacturing or distributing a controlled substance." §2D1.1(b)(12). As in *Clark*, neither the fact that Carbajal did not own or lease the apartment nor the lack of evidence that he had a key are dispositive. *See* 665 F. App'x at 303; §2D1.1 cmt. n.17. Instead, the totality of the evidence shows that Carbajal had free access to and control over Apartment 8A. *See Clark*, 665 F. App'x at 303; *Jones*, 778 F.3d at 385–86; *Garcia*, 774 F.3d at 475; *Christian*, 544 F. App'x at 191. And critically, the apartment to which Carbajal had free access and over which he had control was used *frequently* and *exclusively* for drug storage and distribution. *See* §2D1.1 cmt. n.17. As a result, the district court did not err in granting the premises enhancement.

## B.

Second, Carbajal challenges the district court's denial of a two-level reduction for being "a minor participant in any criminal activity." §3B1.2(b) (the "minor-participant reduction"). A minor participant is one who "is less culpable than most other participants in the criminal activity, but whose role could not be described as minimal."[*] §3B1.2 cmt. 5. Application of the minor-participant reduction is a fact-specific determination "based

---

[*] A minimal participant receives a four-level decrease for lacking "knowledge or understanding of the scope and structure of the enterprise and of the activities of others." §3B1.2 cmt. 4.

on the totality of the circumstances." §3B1.2 cmt. 3(C). Carbajal "bears 'the burden of proving, by a preponderance of the evidence, that he is entitled to a mitigating role adjustment in sentencing.'" *United States v. Powell*, 680 F.3d 350, 358–59 (4th Cir. 2012) (quoting *United States v. Pratt*, 239 F.3d 640, 645 (4th Cir. 2001)). This Court reviews "for clear error the district court's determination" that a defendant "failed to show his entitlement to such an adjustment." *Id.*

The minor-participant reduction can be applied to convictions for concerted criminal activity so long as the defendant "is accountable under § 1B1.3 (Relevant Conduct) only for the conduct in which the defendant personally was involved" and "perform[ed] a limited function in the criminal activity." § 3B1.2 cmt. 3(A). The Sentencing Commission has specifically noted that "a defendant who is convicted of a drug trafficking offense, whose participation in that offense was limited to transporting or storing drugs and who is accountable under § 1B1.3 only for the quantity of drugs the defendant personally transported or stored may receive an adjustment under this guideline." *Id.* Here, Carbajal was indicted for one count of conspiracy to distribute cocaine. Although the conspiracy was large, Carbajal is accountable under § 1B1.3 for only the 8.98 kilograms of cocaine that he personally helped transport on May 16, 2016. As a result, he is eligible for the minor-participant reduction. § 3B1.2 cmt. 3(A). The only question for this Court is whether the district court erred by denying it.

In *Powell*, the Fourth Circuit's most recent published opinion construing the minor-participant reduction, this Court held that "the 'critical inquiry' for a sentencing court, in considering a § 3B1.2 adjustment, is 'not just whether the defendant has done fewer "bad

10

acts" than his codefendants, but whether the defendant's conduct is material or essential to committing the offense.'" 680 F.3d at 359 (quoting *Pratt*, 239 F.3d at 646). We required district courts to "measure the defendant's 'individual acts and relative culpability against the elements of the offense of conviction,' not merely against the criminal enterprise as a whole." *Id.* (quoting *Pratt*, 239 F.3d at 646).

But on November 1, 2015, the Sentencing Commission issued Amendment 794, which implicitly rejected the *Powell* standard and clarified how the minor-participant reduction should be applied. The Commission announced Amendment 794 after conducting a survey and discovering that the "mitigating role is applied inconsistently and more sparingly than the Commission intended." U.S. Sentencing Guidelines Manual, app. C, amend. 794, at 117 (U.S. Sentencing Comm'n Supp. Nov. 1, 2015). The Commission noted that at least four federal circuit courts had "denied a mitigating role adjustment solely because [the defendant] was 'integral' or 'indispensable' to the commission of the offense." *Id.* at 118.

Amendment 794 made three key changes to the Guidelines commentary for § 3B1.2. First, the Commission clarified that whether "a defendant performs an essential or indispensable role in the criminal activity is not determinative." § 3B1.2 cmt. 3(C). Second, the Commission clarified that a defendant should receive the reduction if she is "substantially less culpable than the *average participant in the criminal activity*." *Id.* (emphasis added). In other words, a sentencing court must compare the culpability of the defendant to her codefendants in the criminal enterprise for which she has been convicted, not other defendants convicted of the same offense generally. U.S. Sentencing Guidelines

11

Manual, app. C, amend. 794, at 117. Finally, the Commission added five non-exhaustive factors that courts should consider when applying § 3B1.2:

(i)     the degree to which the defendant understood the scope and structure of the criminal activity;

(ii)    the degree to which the defendant participated in planning or organizing the criminal activity;

(iii)   the degree to which the defendant exercised decision-making authority or influenced the exercise of decision-making authority;

(iv)    the nature and extent of the defendant's participation in the commission of the criminal activity, including the acts the defendant performed and the responsibility and discretion the defendant had in performing those acts;

(v)     the degree to which the defendant stood to benefit from the criminal activity.

§ 3B1.2 cmt. 3(C).

Amendment 794 abrogates our prior holding in *Powell*. It is well established in this Circuit that the Sentencing Commission has "power to override our precedent through amendments to the Guidelines." *United States v. Williams*, 808 F.3d 253, 258 (4th Cir. 2015) (collecting cases). "When the circuits have split on the application of a Guidelines provision, the Commission typically resolves such a disagreement by promulgating a 'clarifying amendment,' which does not alter 'the legal effect of the guidelines, but merely clarifies what the Commission deems the guidelines to have already meant.'" *Id.* (quoting *United States v. Goines*, 357 F.3d 469, 474 (4th Cir. 2004)). "[I]f a clarifying amendment 'conflicts with our precedent,' we recognize that it has 'the effect of changing the law in this circuit.'" *Id.* (quoting *Goines*, 357 F.3d at 474). By resolving a split in the circuits and explaining how § 3B1.2 should be applied, Amendment 794 is just such a clarifying

12

amendment and has therefore changed how sentencing courts in this circuit apply the minor-participant reduction.

In light of Amendment 794, "the 'critical inquiry' for a sentencing court, in considering a § 3B1.2 adjustment," *Powell*, 680 F.3d at 359, is whether the defendant was "substantially less culpable than the average participant" in the broader "criminal activity" for which he was convicted. § 3B1.2 cmt. 3(C). The court measures relative culpability by examining the five factors identified by the Commission, along with any other factors the court might consider relevant. The five factors are not exclusive, and no single factor is dispositive. The sentencing court "may grant a minor role reduction even if some of the factors weigh against doing so, and it may deny a minor role reduction even if some of the factors weigh in favor of granting a reduction." *United States v. Quintero-Leyva*, 823 F.3d 519, 523 (9th Cir. 2016). The defendant bears the burden of defining (by preponderance of the evidence) his culpability as compared to the culpability of the "average participant." The defendant also bears the burden of defining the scope of the "criminal activity" against which he is to be compared.

At sentencing and in his briefs before this Court, Carbajal argues that he was merely a courier and therefore substantially less culpable than Doval, his local co-conspirator. J.A. 15–17, Appellant Br. 12–13. Although Amendment 794's clarifications applied to Carbajal's request for a minor-participant reduction, we cannot determine from the record whether the district court analyzed Carbajal's culpability relative to the average participant in the conspiracy or considered the factors now listed in the commentary to § 3B1.2. Thus, we believe the most prudent step is to vacate and remand for resentencing, as several of

13

the other federal circuit courts have done. *See Quintero-Leyva*, 823 F.3d at 523–24 (reversing and remanding for resentencing where "the record is unclear as to whether the court considered all the factors"); *United States v. Cruickshank*, 837 F.3d 1182, 1195 (11th Cir. 2016) (reversing and remanding for the district court to take into account the factors laid out in Amendment 794).

III.

For the foregoing reasons, the judgment of the district court is

*AFFIRMED IN PART, VACATED IN PART, AND REMANDED.*