**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

───────────────

**No. 21-6992**

───────────────

UNITED STATES OF AMERICA,

Plaintiff – Appellee,

v.

NATHANIEL POWELL, a/k/a Nate,

Defendant – Appellant.

───────────────

Appeal from the United States District Court for the Eastern District of Virginia, at Norfolk. Arenda L. Wright Allen, District Judge. (2:16-cr-00097-AWA-LRL; 2:18-cv-00175-AWA)

───────────────

Argued: September 25, 2024                    Decided: April 10, 2025

───────────────

Before DIAZ, Chief Judge, and NIEMEYER and QUATTLEBAUM, Circuit Judges.

───────────────

Affirmed by published opinion. Judge Quattlebaum wrote the opinion, in which Judge Niemeyer joined. Chief Judge Diaz concurred in the judgment and wrote a concurring opinion.

───────────────

**ARGUED:** Morgan VanGilder Maloney, MCGUIREWOODS, LLP, Richmond, Virginia, for Appellant. Vetan Kapoor, OFFICE OF THE UNITED STATES ATTORNEY, Alexandria, Virginia, for Appellee. **ON BRIEF:** Erin B. Ashwell, MCGUIREWOODS LLP, Richmond, Virginia, for Appellant. Jessica D. Aber, United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Richmond, Virginia, for Appellee.

QUATTLEBAUM, Circuit Judge:

In *Strickland v. Washington*, the Supreme Court reaffirmed that the Sixth Amendment's right to counsel includes assistance that is "effective." 466 U.S. 668, 686 (1984). But the bar for establishing ineffective assistance is high. Because the habeas petition before us fails to clear that bar, we affirm the district court's order of dismissal.

I.

In 2016, Nathaniel Powell pled guilty to one count of conspiracy to manufacture, distribute and possess with intent to distribute more than 100 grams of heroin in violation of 21 U.S.C. §§ 846, 841(a)(1) and (b)(1)(B), pursuant to a written plea agreement. Prior to his sentencing, the United States Probation Office prepared a presentence report that recommended a two-level sentence enhancement under United States Sentencing Guidelines § 2D1.1(b)(12) because Powell "maintained a premises for the purpose of manufacturing or distributing a controlled substance . . . ." U.S.S.G. § 2D1.1(b)(12). This enhancement recommendation was based largely on information provided to detective and drug task force agent Robert Dyer, with the Portsmouth, Virginia police department, by Valerie Wilson, one of Powell's co-defendants and relatives. Wilson told Agent Dyer that she bought drugs from Powell at his residence many times. Wilson also told him that on at least one occasion she saw someone deliver a kilogram of heroin to Powell at "an address on Gateway Drive." J.A. 82–83. And that time specifically, Wilson told Dyer that she heard Powell processing the heroin after he received it at the residence.

2

Lawrence Woodward represented Powell at sentencing.[1] Woodward objected to the premises enhancement, arguing the information from Wilson did not justify its application:

> The Court, in determining the applicability of the . . . drug premise issue, has to base its determination on a summary of one witness that contains almost no detail, was provided under the advice of counsel who presumably advised her about how to maximize her value to the government and who is a heavy drug user. While she no doubt made those statements to the agents, the issue for the Court is, does this single source provide an adequate basis to increase the Defendant's advisory guideline range. . . . The defense contends that it does not.

J.A. 48.

In response, the government argued in its position paper that the enhancement can apply regardless of whether "the defendant lease[s] or own[s] the premises" if the "defendant [has] a substantial connection to the residence and [is] more than a casual visitor." J.A. 57. The government then asserted that Wilson visited an apartment on Gateway Drive "on a dozen occasions" from the summer of 2011 through mid-2016 "to purchase heroin" from Powell, indicating that he used that location "for the purpose of manufacturing, distributing, or using heroin." J.A. 57.

Wilson was not a witness at Powell's sentencing. But, in support of the enhancement, the government called Agent Dyer as a witness.[2] Dyer testified that Wilson

---

[1] At the evidentiary hearing on Powell's 28 U.S.C. § 2255 motion, the government noted that Woodward "has practiced for 39 years, has had thousands of clients, has dealt with Fourth Circuit appeals approximately 90 times, [has handled] 400 federal cases, was on an ethics committee, [and] was on a committee to select magistrate judges . . . ." J.A. 354.

[2] Hearsay testimony is admissible at sentencing. *See United States v. Roberts*, 881 F.2d 95, 105 (4th Cir. 1989).

3

told him that she once observed a delivery of heroin to Powell at the Gateway Drive apartment and overheard "what she believed to be a coffee grinder or some sort of a blender running." J.A. 83. Dyer explained that this indicated heroin distribution because the best way to cut and mix additives into heroin is with a blender. Dyer also testified that Wilson told him that she bought drugs many times "from an address on Gateway Drive in Portsmouth, in an apartment complex." J.A. 90. Dyer acknowledged that he had "not ever been in [the Gateway Drive apartment or] seen any drug-processing equipment" on the premises. J.A. 104. But he said he had surveilled the area and verified that Powell appeared to be living in or using an apartment on Gateway Drive.

Woodward did not call any witnesses or enter other evidence about the premises enhancement. However, he questioned Wilson's credibility. During his cross-examination of Dyer, Woodward confirmed that Wilson was a known drug user and had been addicted to heroin for "several years." J.A. 104. Wilson also pressed Dyer to admit that he had never personally seen Powell handle heroin at the Gateway Drive apartment. In response to questioning from Woodward, Dyer conceded that Wilson's testimony was the only link between drug manufacturing, drug distribution and the Gateway Drive location. Woodward also asked Dyer whether he had verified the time frame in which Wilson supposedly saw Powell receive a package of heroin at the apartment. Dyer testified that he had not.

Despite Woodward's efforts, the district court overruled Powell's objection to the two-level premises enhancement. The court then adopted the presentence report as its own findings of fact and found Powell's offense level to be 37 which, with a criminal history category of VI, along with the applicable statutory maximum, meant that his guidelines

4

range was 360–480 months. The district court sentenced Powell to a prison term of 300 months.

Five months later, Powell moved pro se under 28 U.S.C. § 2255 to vacate, set aside or correct his sentence based on multiple ineffective assistance of counsel claims. The district court dismissed several of Powell's claims for reasons not relevant to this appeal. But it held a hearing on his claim that Woodward, despite Powell's request, "failed to investigate potentially exculpatory evidence pertaining to a two-point [Guidelines] enhancement received for maintaining premises for the purpose of distributing narcotics, including a leaseholder agreement that purportedly shows that someone else leased the premises during part of the time in question." J.A. 293. Powell claimed that if Woodward had investigated the lease as he was asked to, it would have shown that Powell could not have dealt drugs out of the apartment from 2011 to 2016 as the government had argued. Powell also argued that the lease would have undermined Wilson's credibility because it would have shown that she could not have bought drugs from him at the apartment on Gateway Drive several times over five years.

Powell intended to call an ex-girlfriend as a witness at the hearing, but she failed to appear. Even so, the parties stipulated that the ex-girlfriend would have testified that she had leased the Gateway Drive apartment beginning in January 2016, that the lease "was not a renewal of a prior term," that she had "spoke[n] to Mr. Woodward about the Lease" and that she "faxed it to Mr. Woodward's office prior to sentencing." J.A. 299–300, 360.

Woodward testified at the hearing. He first disputed ever receiving the lease. Woodward stated that he "didn't know anything about the lease at the time of the

5

sentencing." J.A. 317. He added that, if Powell's ex-girlfriend faxed any lease to his office, it "didn't end up in [Powell's] file." J.A. 318. While he hedged a bit by saying that he "would never say under oath that a piece of paperwork couldn't get lost," Woodward said that he has "had the same fax number" and the same filing system for 30-plus years, and that he had no such lease in Powell's file. J.A. 312. He then explained his approach to opposing the government's efforts to apply the premises enhancement. Because of the preponderance of the evidence standard governing the application of sentencing enhancements, Woodward felt that "the premises enhancement [was] not a heavy lift for the government." J.A. 316. So, he did not "hire an investigator to go . . . subpoena records and research who lived where when." J.A. 317. Woodward believed that it was ultimately Wilson's "credibility that was [at] stake," not who specifically leased the apartment at a given time. J.A. 317. And he explained that "in [his] experience with the judges in this court, it's not really legally pertinent who owns or rents [an apartment]; it's what it's used for." J.A. 317. Woodward also stated that, "[i]n the scope of a case like this, you know, two points was not going to be the make or break." J.A. 316. And he observed that drug dealers often maintain a "safe place . . . to keep narcotics in." J.A. 318.

The district court dismissed Powell's claim that counsel performed deficiently by failing to investigate the Gateway Drive lease. It concluded that Powell had not shown that Woodward's performance was deficient because Woodward "took other steps in his representation of [Powell]," including cross-examining Dyer. J.A. 374. The court also held that the lease, even if obtained, would not have "compelled a different ruling on the objection" because the premises enhancement can and often does apply "even if a

6

defendant does not lease or own the premises." J.A. 374–75. Lastly, the court held that "Powell's sentence likely would have been the same" even without the enhancement because his sentence of 300 months would have been at the low end of his corresponding Guidelines range. J.A. 375–76. Thus, it denied Powell's § 2255 motion.[3]

Powell timely appealed, initially proceeding pro se.[4] We first remanded the matter to permit the district court to rule on Powell's motion for a certificate of appealability that he had filed below, which the district court denied. Then, we granted Powell a partial certificate of appealability on "whether Powell's trial counsel rendered ineffective assistance by failing to present a lease agreement and witness testimony to rebut the Government's assertion that Powell maintained a residence on Gateway Drive in Portsmouth, Virginia, for the distribution of controlled substances." J.A. 381–82. We also appointed him counsel.

---

[3] Despite its ruling, the district court made very few findings of fact at the evidentiary hearing it held to address Powell's ineffective assistance of counsel claims. It did not resolve (1) who leased the Gateway Drive apartment and when it was leased; (2) whether Woodward knew of or had the lease in his possession at the time of the sentencing hearing; (3) whether Powell instructed Woodward to investigate the lease; or (4) when Powell began using the Gateway Drive apartment to distribute heroin.

[4] We have jurisdiction under 28 U.S.C. § 2253. "We review a district court's denial of relief on a § 2255 motion de novo." *United States v. Palacios*, 982 F.3d 920, 923 (4th Cir. 2020). However, we review the "district court's . . . findings of fact for clear error." *United States v. Winbush*, 922 F.3d 227, 229 (4th Cir. 2019) (quoting *United States v. Roane*, 378 F.3d 382, 395 (4th Cir. 2004)).

II.

Powell contends on appeal that Woodward's performance was not objectively reasonable because he failed to reasonably investigate the existence and duration of the lease of the apartment where Wilson said she bought drugs from Powell. According to Powell, the lease "would have revealed that [his ex-girlfriend's] lease began only a few months prior to [] Powell's arrest, not five years before as [] Wilson stated." Op. Br. at 13. Thus, Powell insists that the lease "would have contradicted [] Wilson's testimony about the 'use' of the premises" and would have shown that Powell did not exercise control over the premises as required by the Guidelines. Op. Br. at 15.

Powell's ineffective assistance of counsel claim must be evaluated under the well-recognized *Strickland* test. That test has two prongs. First, a petitioner must "show . . . that counsel's performance was constitutionally deficient." *United States v. Mayhew*, 995 F.3d 171, 176 (4th Cir. 2021) (citing *Strickland*, 466 U.S. at 687). Second, even if a petitioner establishes that his counsel's assistance was constitutionally deficient, the petitioner must "establish prejudice, in the form of a 'reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Mayhew*, 995 F.3d at 176 (quoting *Strickland*, 466 U.S. at 694). Powell comes up short on both prongs.

A.

Beginning with constitutionally deficient performance, "trial lawyers must have wide latitude in making tactical decisions." *Noland v. French*, 134 F.3d 208, 217 (4th Cir. 1998); *see also Knowles v. Mirzayance*, 556 U.S. 111, 127 (2009). As a result, a petitioner

8

must overcome the "strong presumption that counsel's representation was within the wide range of reasonable professional assistance." *Mayhew*, 995 F.3d at 176 (quoting *Harrington v. Richter*, 562 U.S. 86, 104 (2011)). Mere deviation from best practices will not do. *See Winston v. Pearson*, 683 F.3d 489, 504 (4th Cir. 2012). Instead, "the critical question is whether an attorney's representation amounted to incompetence under prevailing professional norms . . . ." *Id.* (cleaned up). And "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." *Strickland*, 466 U.S. at 690.

Measured against this standard, Woodward's performance is not constitutionally deficient. After the United States Probation Office's presentence report recommended applying the premises enhancement, Woodward met with Powell about it four times. He then drew on his experience with how courts actually apply the enhancement in the real world. Since the burden to apply the enhancement was only preponderance of evidence, Woodward felt the government did not face "a heavy lift . . . ." J.A. 316. And he explained that "in [his] experience with the judges in this court, it's not really legally pertinent who owns or rents [an apartment]; it's what it's used for." J.A. 317. For that reason, he did not "hire an investigator to go . . . subpoena records and research who lived where when." J.A. 317. To Woodward, the more important issue was attacking Wilson's credibility.

So, Woodward did that at every turn. In the position paper he filed objecting to the premises enhancement, Woodward pointed out that Wilson's statement lacked detail, that she was a habitual drug user and that she was likely acting in her own self-interest in giving the statement. During his cross-examination of Dyer, Woodward forced Dyer to concede

9

that Wilson was a known drug user and had been a heroin addict for many years. Woodward's cross-examination also required Dyer to acknowledge that he had never seen Powell handling heroin at the Gateway Drive apartment. That meant, as Dyer verified, that Wilson's testimony was the only link between drug manufacturing and distribution and the Gateway Drive location. In response to Woodward's cross-examination, Dyer also admitted that he did not verify the time period when Wilson claimed to have seen Powell receive and process heroin at the apartment.

Powell contends the lease would have bolstered those credibility attacks. Maybe so. But that is not the way we review ineffective assistance of counsel claims. We do not "grade counsel's performance" like "the critic . . . who points out . . . where the doer of deeds could have done them better." *Strickland*, 466 U.S. at 697; Theodore Roosevelt, The Man in the Arena: Citizenship in a Republic, Address at the Sorbonne, Paris (Apr. 23, 1910), in *Theodore Roosevelt: Letters and Speeches* 781–82 (Louis Auchincloss ed., 2004); *see Noland*, 134 F.3d at 217. With the benefit of hindsight, improvements could be made to almost any representation. To the contrary, we ask only whether the representation provided was constitutionally defective. And failing to make every conceivable argument does not meet that standard. *See Springer v. Collins*, 586 F.2d 329, 332 (4th Cir. 1978) (explaining that "effective representation is not synonymous with errorless representation"). Adhering to all best practices is not required. *Winston*, 683 F.3d at 504. Instead, Powell must show that Woodward was professionally incompetent under prevailing standards. *Id*. He has not met this high bar.

10

What's more, Powell overstates the importance of the lease in opposing the application of the premises enhancement. He says the lease would have "directly contradicted Ms. Wilson's uncorroborated hearsay testimony." Op. Br. at 16. But that is not correct. While Wilson said that she bought drugs from Powell at the Gateway Drive apartment several times between 2011 and 2016, she did not provide precise dates on which any of the transactions with Powell purportedly occurred, including the transaction during which she allegedly witnessed him receive a heroin delivery. Wilson also did not say that Powell owned the apartment or that he rented it. Thus, proving that Powell's ex-girlfriend only rented the apartment in 2016 does not prove that Wilson had not used it with someone else's permission prior to 2016. In other words, Wilson's testimony is not incompatible with Powell's ex-girlfriend's lease that began in January 2016.

Nor did the government have to show a current lease or title to property to apply the enhancement. Even if a defendant does not own or lease a premises, he can maintain it for purposes of the enhancement where he has full access to it and stays there overnight on a regular basis.[5] *See United States v. Barnett*, 48 F.4th 216, 220–21 (4th Cir. 2022) (holding that "courts [applying the premises enhancement] have considered factors such as the defendant's ready access to the premises, staying overnight, the defendant's frequency at the premises, and the defendant's participation in the drug activity there"). The government introduced evidence that Powell sold, received and processed drugs in the apartment many

---

[5] U.S.S.G. § 2D1.1(b)(12) states: "If the defendant *maintained* a premises for the purpose of manufacturing or distributing a controlled substance, increase by 2 levels." (emphasis added).

11

times over five years. And it introduced evidence that Dyer personally surveilled the apartment complex on Gateway Drive to confirm that Powell lived there. So, the government introduced enough evidence to apply the enhancement regardless of the lease or its duration.

Powell lodges several other complaints at Woodward. He criticizes Woodward's statement that "it's not really legally pertinent who owns or rents" the premises. J.A. 317. In fairness, the lease was not irrelevant. But as already shown, it was far from determinative. More importantly, Woodward's testimony as a whole reveals he knew the law. Woodward stated that he knew the "judges in this court" typically believed that ownership of a premises was not as important as use. J.A. 317. His impression of the kinds of arguments likely to succeed before the judges of the Eastern District of Virginia, grounded in decades of experience defending criminal defendants, does not appear to be the fundamental misunderstanding of the law that Powell suggests.

Powell also takes issue with Woodward's statement that "two points was not going to be the make or break" in Powell's case. J.A. 316. It is true that "the two-points would have moved the top Guidelines-range sentence" down by over nine years and "the bottom sentence" down by five and a half years. *Id.* But to the extent Powell suggests that Woodward's statement shows he did not try hard enough to oppose the premises enhancement, the record shows otherwise. As already discussed, Woodward consistently opposed the application of the enhancement. And his decision not to add a layer onto his other attacks on Wilson's credibility is not constitutionally deficient given the high bar *Strickland* imposes.

12

Finally, Powell primarily cites to *United States v. Freeman*, 24 F.4th 320, 326–27 (4th Cir. 2022), as support for his argument that Woodward's decision not to investigate whether Powell owned or leased the premises was inherently deficient. *Freeman* held that an attorney's decision to waive certain objections at sentencing was not a tactical decision entitled to deference because "a cursory 'investigation' would have revealed that" the attorney's decision was based on incorrect assumptions. *Freeman*, 24 F.4th at 330 (explaining that strategic choices made after "less than complete investigation[s]" are "reasonable precisely to the extent that reasonable professional judgments support the limits on investigation" (quoting *Strickland*, 466 U.S. at 690–91)). But the time spent investigating is not the whole story. A quick glance from an experienced hand can be enough to reveal a shaky foundation. Besides, this old hand did more than glance. Woodward met with Powell four times to discuss the presentence report. He knew and considered the law that says the premises enhancement can apply even when a defendant has no "possessory interest" in the premises, when a defendant "does not live at the premises" and even when a defendant does not "exercise exclusive control" over the premises. *Barnett*, 48 F.4th at 220–21 (citing both earlier unpublished Fourth Circuit authority and published out-of-circuit cases that confirm the premises enhancement can apply "if the sum of the evidence supports it" even "where the defendant does not live at the premises"). And Woodward attacked the credibility of the sole witness who stated that Powell had used the apartment to manufacture and distribute heroin. While Powell might quibble that Woodward could have done more, Woodward's meetings with Powell,

13

knowledge of the law and strategy for attacking Wilson's credibility are not inherently deficient or the product of a cursory investigation. Thus, *Freeman* does not help Powell.

To wrap up prong one, we do not need to conclude that Woodward's representation was perfect to find that it was objectively reasonable under the circumstances of this case. Woodward certainly could have investigated who leased or owned the apartment, and such an investigation might have pressed the government to make additional or more detailed arguments in support of the premises enhancement. But such possibilities do not render Woodward's representation constitutionally deficient. Powell has not met his burden on this first *Strickland* prong. He has failed to show that Woodward's decision to attack Wilson's credibility rather than investigating the lease and Powell's control of the premises was objectively unreasonable.

### B.

But even if Powell satisfied *Strickland*'s first prong, he fails at the second. To establish prejudice under prong two of *Strickland*, "[i]t is not enough for the [petitioner] to show that the errors had some conceivable effect on the outcome of the proceeding," as "[v]irtually every act or omission of counsel would meet that test." *Strickland*, 466 U.S. at 693. And "not every error that conceivably could have influenced the outcome undermines the reliability of the result of the proceeding." *Id.* "Instead, *Strickland* asks whether it is 'reasonably likely' the result would have been different." *Harrington*, 562 U.S. at 111. Ultimately, "[t]he likelihood of a different result must be substantial, not just conceivable." *Id.* at 112. Thus, the bar for showing prejudice is generally high. But "in most cases, when a district court adopts an incorrect Guidelines range, there is a reasonable probability that

14

the defendant's sentence would be different absent the error." *Freeman*, 24 F.4th at 331–32 (quoting *Molina-Martinez v. United States*, 578 U.S. 189, 192 (2016)).

Despite that general principle, the record here indicates that the district court would have overruled Powell's objection to the premises enhancement even if Woodward had investigated Powell's control of the premises or presented the court with the lease and testimony from the ex-girlfriend. In its order denying Powell's § 2255 motion after a hearing on the instant ineffective assistance of counsel claim, the district court said:

> Petitioner fails to provide evidence or substantive argument that shows that the Court would have sustained his objection and granted him a more lenient sentence if the lease were produced.

> Even if this objection had been sustained, Mr. Powell's sentence likely would have been the same. He had an offense level of 37, which resulted in a guidelines range of 360 months to life, restricted to the statutory maximum of 480 months. . . . If the objection had been sustained, his offense level would have been a 35, resulting in a guidelines range of 292 months to 365 months at the time of sentencing. Mr. Powell was sentenced to 300 months, the low end of the Guidelines range.

J.A. 375–76. The district court also stated, "[Powell] has not shown how this evidence would have compelled a different ruling on the objection. The enhancement can apply even if a defendant does not lease or own the premises. Sufficient evidence was produced at the time of sentencing for this Court to find that Mr. Powell was selling drugs from this address regardless of the status of ownership of the premises." J.A. 374–75.

Breaking down those statements, the district court said that it (1) would still have applied the enhancement and (2) would have applied a similar sentence even if it had not applied the enhancement. Both statements indicate that the result in Powell's case would

not have been different even if Woodward had taken all the steps Powell now argues he should have taken.

Powell counters with our holding in *Freeman* that a district court's statement that it would have imposed the same sentence in light of the § 3553(a) factors regardless of the "calculated Guidelines range" cannot "insulate a sentence from" an ineffective assistance of counsel claim. *Freeman*, 24 F.4th at 332. But this case is different from *Freeman*. *Freeman*, which we took up on direct appeal, involved a district court's general statement at the end of a sentencing hearing that it would have applied the same sentence even it had committed errors in its sentencing. We held that such a statement—untethered to any specific sentencing issue or objection—does not provide prophylactic protection from an ineffective assistance challenge under *Strickland*. *Id.* In contrast, the district court's statement here followed a § 2255 evidentiary hearing that addressed the very evidence that Powell claims should have been introduced at sentencing and at which the parties presented arguments on whether the result would have been different in light of that evidence. So, the district court's statement was retroactively addressing the precise issue that is the subject of Powell's ineffective assistance of counsel claim. Despite the existence of the lease and the new attacks on Wilson's credibility, the district court stated that Powell had not established that "ineffective assistance of counsel occurred," that the lease would not have "compelled a different ruling on the objection" and that Powell's sentence "likely would have been the same." J.A. 369, 374–75. Relevant to our *Strickland* prong two analysis, such statements provide valuable and informed insight into what the court would have done had Woodward acted as Powell claims he should have.

16

Lastly but importantly, the district court's statements seem grounded in its credibility findings as to Wilson. In its order denying Powell's § 2255 motion, the court stated, "[a]s the finder of fact, this Court made reasonable, correct findings regarding Ms. Wilson's credibility, other related evidence, and the objections presented." J.A. 374. The district court said this with full knowledge of Powell's new arguments that the lease contradicts or undermines Wilson's testimony. Powell's arguments fail to show the court's credibility determinations were clearly erroneous, which is our standard for reviewing such findings. *See United States v. Nunez-Garcia*, 31 F.4th 861, 868 (4th Cir. 2022) (stating that "the district court's decision to credit this interpretation of Nunez-Garcia's testimony over the former cannot constitute clear error" and that "the trier of fact [is] in a better position to evaluate the credibility of witnesses" (cleaned up)).

To conclude, there is no reasonable probability that the district court would not have applied the premises enhancement even if Woodward had done what Powell argues he should have done. Nor is there any reasonable probability that the district court would have sentenced Powell differently even if it had declined to apply the premises enhancement. And Woodward's decision to attack Wilson's credibility rather than investigate whether Powell owned or leased the Gateway Drive apartment was not constitutionally deficient.

## III.

For these reasons, the district court's order denying Powell's § 2255 motion is,

*AFFIRMED.*

17

DIAZ, Chief Judge, concurring in the judgment:

To prevail on an ineffective assistance of counsel claim, Powell must show that his counsel's performance was constitutionally deficient and that he was prejudiced as a result. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Because I agree with my colleagues that Powell can't show prejudice, I join in the judgment. But I write briefly to make two points.

First, as to prejudice, I'd rest solely on the majority's conclusion that there isn't a "reasonable probability that the district court would have sentenced Powell differently even if it had declined to apply the premises enhancement." Majority Op. at 17.

Powell's burden was to prove that "there is a reasonable probability that, but for counsel's [allegedly] unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. The district court, after conducting an evidentiary hearing and considering Powell's § 2255 motion, concluded that Powell's "sentence likely would have been the same" even if his objection to the premises enhancement had been sustained. J.A. 375. Considering this statement and the explanation the district court offered for Powell's sentence during his sentencing hearing, I can't say "there was a reasonable probability that [his] sentence would have been reduced" but for the faults Powell assigns to his counsel's representation. *United States v. Freeman*, 24 F.4th 320, 332 (4th Cir. 2022) (en banc).

Second, finding no prejudice, I'd decline to address deficient performance. As Powell must show both prejudice and deficient performance to prevail on his ineffective assistance claim, "there is no reason . . . to address both components of the inquiry if the

18

defendant makes an insufficient showing on one." *Strickland*, 466 U.S. at 697.  The panel

agrees that Powell didn't meet his burden to show prejudice.  I would go no further.

To be frank, I harbor some reservations about counsel's performance.  "[C]ounsel

has a duty to make reasonable investigations or to make a reasonable decision that makes

particular investigations unnecessary." *Id.* at 691.  Here, the justifications counsel offered

during the evidentiary hearing give me pause about his investigatory decisions.

At the time of Powell's sentencing, the sentencing guidelines commentary, our

cases, and other circuits' decisions rebuffed counsel's view that "it's not really legally

pertinent who owns or rents" a premises for the purpose of manufacturing or distributing a

controlled substance.[1]  J.A. 317.  There are certainly other ways a defendant could be found

to "maintain" a premises for that purpose,[2] but counsel couldn't recall during the

evidentiary hearing whether he'd found that those factors applied to Powell.  J.A. 317–18.

And a focus on "what [a premises is] used for" does little to explain counsel's

approach.  J.A. 317.  Counsel recalled that Powell "expressed to [him] that [the premises]

wasn't used for drug operations."  J.A. 319.  Yet he appears to have focused his

---

[1] The guidelines commentary provided that "court[s] should consider" a defendant's possessory interests.  U.S.S.G. § 2D1.1 cmt. n.17 (2016).  We reiterated that. *United States v. Clark*, 665 F. App'x 298, 302–04 (4th Cir. 2016) (per curiam); *United States v. Keitt*, 647 F. App'x 157, 159 (4th Cir. 2016) (per curiam); *United States v. Moore*, 553 F. App'x 345, 345–46 (4th Cir. 2014) (per curiam); *United States v. Christian*, 544 F. App'x 188, 190–91 (4th Cir. 2013) (per curiam).  As did other circuits. *E.g.*, *United States v. Johnson*, 737 F.3d 444, 447 (6th Cir. 2013); *United States v. Miller*, 698 F.3d 699, 705–06 (8th Cir. 2012).

[2] For example, a defendant can be found to "maintain" a premises based on "the extent to which [he] controlled access to, or activities at, the premises."  U.S.S.G. § 2D1.1 cmt. n.17.

19

investigation and objections not on Powell's use of the premises but on the credibility of Powell's codefendant.

My conclusion that Powell can't show prejudice is not an endorsement of counsel's assessment that "[i]n the scope of a case like this, . . . two points was not going to be the make or break." J.A. 316. Courts considering ineffective assistance claims take the record as they find it. Counsel is responsible for developing that record in the first instance.

I would hope that, in carrying out that duty, attorneys don't lose sight of "the potential impact" a two-point enhancement may have "on [their client's] sentencing exposure." *Freeman*, 24 F.4th at 331. Here for example, application of the two-point enhancement added nearly a decade to the upper end of Powell's sentencing guidelines range.

That said, I can't say there's a reasonable probability Powell's sentence would have been different without the premises enhancement. I therefore concur in the judgment.

20